[Civ. No. 24123. Fourth Dist., Div. One. Jan. 29, 1982.]

FRANCES E. WHITE, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent.

[redacted]

**COUNSEL**

Frances E. White, in pro. per., Brav & Schwartz and Nelson P. Brav for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Lawrence C. Kuperman, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**STANIFORTH, J.**—Dr. Frances E. White (Dr. White) was charged by the Board of Medical Quality Assurance (Board) with unprofessional conduct in the acts of prescribing medicine to persons who were addicts and to persons representing themselves to be addicts. The Board claimed there was an absence of medical indication for prescriptions given by Dr. White. After an administrative hearing, a proposed decision was submitted to the Board but it refused to adopt the administrative law judge's findings: instead it considered the record anew and issued its own decision. The Board revoked Dr. White's license to practice medicine but stayed the revocation five years and placed her on probation with certain conditions. Dr. White petitioned the superior court for writ of mandate to annul the Board's decision. After hearing, the trial court denied the petition.

The trial court applied the independent judgment test and concluded the administrative proceedings "were conducted fairly and in the manner required by law, and that the decision of the respondent was supported by its findings . . . ."

Dr. White appeals, contending (1) the Board cannot find her in violation of Business and Professions Code section 2399.5 without first finding she failed to conduct a good faith prior examination of the patient, (2) there has been a denial of due process and effective assistance of counsel at the administrative proceedings, and (3) Health and Safety

Code section 11156 is unconstitutionally vague and for that reason the trial court erroneously failed to issue the requested writ of mandate.

## FACTS

Factual stipulations were entered into before the administrative proceedings which established that Dr. White prescribed Quaalude, Lomotil, Darvon-N and other drugs for John Payne. Payne had represented to Dr. White he was a heroin addict; he was in fact a heroin addict and Dr. White was treating him for his heroin addiction. Payne died as a result of an overdose of Darvon-N and Quaalude.

Dr. White also prescribed Quaalude and Triavil, and Valium for Gerald Morris who had represented to her he was a heroin addict. He was in fact an addict. Morse died as a result of an overdose of morphine, Quaalude and alcohol poisoning.

A third person, Gerald McClellan (using the name of Brian Paul), told Dr. White he needed something to stay awake when driving long distances. He mentioned no physical or mental problems. After a physical examination, McClellan told Dr. White he had used Desoxyn previously. Dr. White again prescribed Desoxyn for him. To give him something for sleep, Dr. White prescribed fifteen 300-milligram Quaaludes. With respect to DuWayne Berreth, Dr. White was told by him he was a heroin user and had previously used Percodan and Dilaudid. Berreth was given a series of injections and a prescription for Quaalude and Lomotil.

The Board contends Dr. White improperly seeks to raise on appeal issues not raised before the administrative agency or the superior court. We preliminarily examine that issue of cognizability.

The Board argues the *only* issue on appeal cognizable by this court is whether the physician is prohibited by Health and Safety Code sections 11156 and 11217.5 from *prescribing* controlled substances to addicts and persons representing themselves to be addicts.

Dr. White points to the fact that the petition for writ of mandate made the contention that the "evidence at the hearing does not support this finding." Dr. White further points to the Code of Civil Procedure section 1094.5, subdivision (b), requirement that the judicial inquiry extends to the questions of whether the respondent court has proceeded

without or in excess of jurisdiction and whether there has been a fair trial. We examine Dr. White's contention in light of the statutory directive.

DISCUSSION
I

■ Dr. White contends both the Board and the superior court failed to specifically find the existence of a necessary element to constitute a violation of section 2399.5, to wit, an absence of a good faith prior medical examination of Gerald McClellan.

Business and Professions Code section 2399.5 [now § 2242, subdivision (a)], provides: "Prescribing, dispensing or furnishing dangerous drugs as defined in Section 4211 without a good faith prior examination *and* medical indication therefor, constitutes unprofessional conduct." (Italics added.)

Before January 1, 1975, section 2399.5 spoke in the disjunctive. The requirement was prescribing dangerous drugs "without either a prior examination of the patient *or* medical indications therefor." As it presently reads the physician must conduct a prior examination as well as find medical indications to warrant the prescription. Thus if Dr. White failed either to conduct a good faith examination or found no medical indication authorizing the prescription, then disciplinary action could be taken. While before amendment the statute would arguably require a specific finding of the absence of a good faith examination, (see *Whitlow* v. *Board of Medical Examiners* (1967) 248 Cal.App.2d 478, 480 [56 Cal.Rptr. 525]), yet since the 1975 amendment to section 2399.5, both prerequisites are present. The Board was authorized to take disciplinary action against a physician (1) if the physician does not perform a good faith prior examination or (2) if there was no medical indication for prescribing of the dangerous drug in question. We conclude there is no mandatory requirement of a finding that the physician failed to conduct a good faith prior examination before disciplinary action may be taken.

II

Dr. White next contends she was denied due process of law and effective assistance of counsel at the administrative proceedings. ■ She cites these particulars: first it is represented that she was entitled to

have relevant portions of her "exculpatory statement" admitted as evidence or at least officially noticed. ■ There is no question but that administrative hearings are required to conform to essential fairness and due process standards. As is said in the California Administrative Agency Practice (Cont.Ed.Bar 1970) section 3.1, page 142: "While certain elements of courtroom formality are lacking in administrative hearings, the proceedings are substantially the same as those employed in civil trials. All too often, a novice attorney arrives at a hearing with the notion that he and the hearing examiner are meeting for a friendly chat.

"The attorney should be prepared to present his case in much the same manner he would in a nonjury civil court trial."

Fundamental fairness—due process—includes the right to present legal and factual issues in a deliberate and orderly manner. (*H. Moffatt Co.* v. *Hecke* (1924) 68 Cal.App. 35, 39 [228 P. 546].) And the accused has a right to call witnesses necessary to a defense (*Evans* v. *Industrial Acc. Com.* (1945) 71 Cal.App.2d 244, 248 [162 P.2d 488]) and to rebut evidence introduced against her (*King* v. *Board of Medical Examiners* (1944) 65 Cal.App.2d 644, 651 [151 P.2d 282]). And the party has the right to introduce exhibits; all relevant evidence is admissible. (Gov. Code, § 11513, subds. (b), (c).) ■ It is argued White's exculpatory statement contained matters relevant to her statutory defense and to any penalty assessed. She correctly points out that mitigating evidence may be considered for the purpose of assessing penalty. (*Richards* v. *Gordon* (1967) 254 Cal.App.2d 735, 741 [62 Cal.Rptr. 466].)

Dr. White offered into evidence a document of some several hundred pages in length. The attorney for the Board objected to the introduction of the document as a whole because of the lack of foundation for its contents. A discussion followed between the administrative law judge and White's attorney, after which the attorney withdrew his offer of the documents into evidence. After the attorney had agreed that the documents be marked for identification only, the administrative law judge stated "You understand this is a choice, intelligent choice to be made by counsel on behalf of Respondent [White] in her best interests and whatever offer you make I'm going to rule on. I'm only asking—" Then Attorney Schroeder said "We'll offer that to be marked and to be used as argument and to be used as clarification for this case . . . ."

There is no basis in this record to support the claim that this "exculpatory" statement should have been admitted into evidence. The document could not be received because of the lack of foundation. We do not know the contents. We can only speculate as to its relevancy or reliability. Finally, we note parenthetically the penalty imposed (straight probation) upon Dr. White does not give rise to a basis for complaining that the evidence in mitigation was not considered.

### III

■ Dr. White next asserts the Board erred in receiving a stipulation into evidence without her knowing consent. Again, the record does not support this assertion. The Board's attorney requested the administrative law judge "to take care of the matter of Dr. White's agreement and the stipulation." The administrative law judge then asked White's counsel to inquire of White as to her knowledge of the contents of the stipulation and her understanding. White then said she understood that in a stipulation of facts no further proof was required. White also understood "when you stipulated you admitted the truth of that fact." The administrative law judge explained to White the sole purpose of the discussion was to be sure that she understood what was done by her counsel and that she was in agreement with it.

When Dr. White sought to ask a question, the administrative law judge told her to discuss it with her counsel and the matter would then be considered. A brief recess was taken to allow White to confer with her attorney. After the recess, Attorney Schroeder represented that White feared that by entering into the stipulation, she was in effect stipulating she had broken the law. Attorney Schroeder said Dr. White was willing to stipulate to the facts but did not agree that the facts if true would constitute a breaking of the law. After this discussion Dr. White assented to the stipulation. The administrative law judge said he was satisfied the stipulation had been entered freely and voluntarily and with full knowledge of the effect of such procedure.

Cases cited by Dr. White regarding the lack of authority of attorneys to stipulate away substantive rights of their clients have no application here. Dr. White was extensively questioned on the record and only after lengthy discussion with her counsel was there a determination made to join in the taking of the stipulation. Moreover, Dr. White has not, does not, seek to be relieved of the stipulation. In *Thayer* v. *Board of Osteopathic Examiners* (1958) 157 Cal.App.2d 4, 8 [320 P.2d 28], Dr.

Thayer stipulated to the truth of certain allegations. Based upon the stipulations the board revoked his license and Thayer sought a writ of mandate. The appeal court held that Thayer could not avoid the effect of the stipulation without first seeking to be relieved of the stipulation. (*Ibid.*) We find no Board error here.

## IV

■ Dr. White next contends she was denied the right to effective counsel. Dr. White runs afoul of the general rule to the effect there is no right to counsel in civil cases. (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978, 979 [164 Cal.Rptr. 118].) Specifically, it has been held that there is no right to counsel in a licensee disciplinary action guaranteed in California Constitution, article I, section 13, or Amendment VI to the federal Constitution. (*Borror v. Department of Investment* (1971) 15 Cal.App.3d 531, 539 [92 Cal.Rptr. 525]; see also *Staley v. California Unemployment Ins. App. Bd.* (1970) 6 Cal.App.3d 675, 678 [86 Cal.Rptr. 294].) Rather, the right derives from due process considerations. This concept has not been extended to encompass appointment of counsel except in certain restricted cases. In *Salas v. Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], the Supreme Court extended the right of counsel to *indigent* defendants in paternity actions brought by the district attorney. However, the facts in *Salas* do not parallel those here. In *Salas* the defendants were indigent, not fluent in the English language. Salas was a paternity case, exposing the defendant to a possible deprivation of liberty. (Pen. Code, § 270.) Here, Dr. White is a physician of many years experience. She was able to hire, be represented by counsel of her own choosing. There is nothing in the record before this court to suggest that any act or failure to act upon the part of her counsel gave rise by analogy to *Pope* error. (*People v. Pope* (1979) 23 Cal.3d 412, 428 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) We are unaware of any authority which would permit this court to reverse the trial court's decision, grant a retrial to the unsuccessful litigant on the grounds of incompetence of counsel in this a civil action involving disciplinary action taken against a licensee. While due process requires the right to counsel, the right to "effective" counsel in civil proceedings that lack overhanging criminal penalties has yet to be recognized. (*Chevalier v. Dubin, supra,* 104 Cal.App.3d 975, 978-979.[1]

---

[1] In a writ of mandate proceedings, there is nothing comparable to the proceeding allowed in the criminal area where a separate action for writ of habeas corpus is available in which to explore the factual basis of a claim of ineffectiveness of counsel.

Dr. White asserts her lawyer failed to present the affirmative defense of entrapment; such defense is viable in California in a licensee revocation proceeding. (*Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356, 362-363 [107 Cal.Rptr. 473, 508 P.2d 1121, 61 A.L.R.3d 342].) This defense was not presented at the administrative hearing, nor was the issue raised in the superior court proceedings. Dr. White cites the failure to pursue this defense as proof of counsel's ineffectiveness. If there was a defense of entrapment, Dr. White does not enlighten us as to the factual basis for such a defense. A quotation from Solzhenitzyn is not a substitute for a factual tender. Therefore this appeal court is without basis in fact or legal precedent to find reversible error in this sea of uncertainty.

## V

Lastly, White next contends Health and Safety Code section 11156 is unconstitutionally vague and ambiguous. Dr. White was disciplined for a violation of section 2391.5 of the Business and Professions Code. This section makes a violation of "any federal statute or rule or regulation or any of the statutes or rules of this state regulating narcotics, dangerous drugs or controlled substances" a ground for license revocation. Dr. White was accused of violating two state statutes dealing with the prescribing of controlled substances to addicts, to wit, Business and Professions Code section 2391 and Health and Safety Code section 11156.

Health and Safety Code section 11156 explicitly provides: "No person shall *prescribe for or administer, or dispense* a controlled substance to an addict or habitual user, or to any person representing himself as such, except as permitted in this division."

Dr. White then points to subdivision (c) of section 2391 which makes an important exception to section 11156 where the drugs "*are administered" by a licensed physician, treating addicts as provided by section 11217.5 of the Health and Safety Code.* This latter section does in fact detail a statutory exception to the broad ban of section 11156, for referent section 11217.5 provides in pertinent part: "[A] licensed physician and surgeon may treat an addict for addiction in any office or medical facility which, in the professional judgment of such physician and surgeon, is medically proper for the rehabilitation and treatment of such addict. *Such licensed physician and surgeon may administer to an ad-*

*dict, under his direct care, those medications and therapeutic agents which, in the judgment of such physician and surgeon, are medically necessary, provided that nothing in this section shall authorize the administration of any narcotic drug."* (Italics added.)

■ Dr. White asserts the phrase "may administer to an addict" includes the act of *prescribing*. "Administer" is defined in Health and Safety Code section 11002 as "direct application of a controlled substance, whether by injection, inhalation, ingestion, or any other means, to the body of a patient for his immediate needs . . . ." "Prescription" on the other hand is defined in Health and Safety Code section 11027 as "an oral order for a controlled substance given individually for a person for whom prescribed, directly from the prescriber to the furnisher or indirectly by means of an order signed by the prescriber . . . ."

The statutory definition clearly points to this conclusion: "prescribing" differs from administering; "prescribing" is not authorized by section 11217.5. This conclusion is substantiated by the Legislature's numerous references which differentiates prescribing from furnishing or administering. (See Health & Saf. Code, §§ 11210-11215, 11217.5-11231 governing the treatment of addicts in restricted settings with controlled substances.)[2]

Dr. White argues that the context in which the word is used in Health and Safety Code section 11156 requires that "administer" include "prescribe." Dr. White reasons: If this were not true, in order for a physician to treat an addict with any drug, the physician would have to inject or watch the drug inhaled or injected. The flaw in Dr. White's argument is that Health and Safety Code section 11156 only prohibits a physician from prescribing, furnishing or administering the "controlled substances." It does not prohibit a physician from prescribing for persons with many other "prescription" drugs.

The challenged provisions of sections 2391.5 and 11156 are not so vague as to raise any constitutional doubts as to their enforceability. Dr. White was charged with violating these specific laws. She received a fair hearing before the Board and the superior court. Substantial

---

[2]For example Health and Safety Code section 11220 declares that "[a]t the end of 30 days from the first treatment, the prescribing or furnishing of controlled substances, except methadone, shall be discontinued."

evidence supports the trial court's findings approving the Board's procedures and decision.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied February 17, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 14, 1982.