[Civ. No. 53589. First Dist., Div. Two. Sept. 8, 1983.]

PITTSBURG UNIFIED SCHOOL DISTRICT,
Plaintiff and Respondent, v.
COMMISSION ON PROFESSIONAL COMPETENCE,
Defendant and Respondent;
BERT LEE JEFFERY, JR., Real Party in Interest and Appellant.

966

968

COUNSEL

Curtis G. Oler for Real Party in Interest and Appellant.

Keith V. Breon, Priscilla Brown and Breon, Galgani, Godino & O'Donnell for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**SMITH, J.**—Appellant Bert Lee Jeffery, Jr. (Jeffery), is a permanent certificated employee of the Pittsburg Unified School District (District). In dismissal proceedings instituted against him by the District before the Commission on Professional Competence (Commission) pursuant to Education Code section 44932,[1] the Commission determined that no grounds for his dismissal existed and ordered that he should not be dismissed. The District then sought and obtained a writ of mandate in Contra Costa County Superior Court commanding the Commission to set aside its decision and to modify said decision to order Jeffery's dismissal. Jeffery now appeals from the judgment of the superior court granting the peremptory writ of mandate.

FACTS

The following procedural facts appear from the verified writ petition and answer filed in the superior court, and from other portions of the record on appeal. The original administrative record has not been filed with this court except for the reporter's transcript of the administrative hearing.

On May 22, 1980, a statement of charges was filed by the District with the Board of Education of the Pittsburg Unified School District (Board)

---

[1]All statutory section references hereafter are to the Education Code unless otherwise indicated.

charging that cause existed under subdivisions (a), (c), (e) and (g) of section 44932 for appellant's dismissal, and recommending that the Board give 30 days notice of its intention to dismiss appellant. On the same day, the Board, by duly adopted resolution, authorized and directed service of such notice.

On May 26th, appellant was served with a notice of immediate suspension and of intention to dismiss. On June 25th, appellant filed with the Board a written request for hearing.

On or about August 6, 1980, an accusation was filed alleging the existence of cause for dismissal under the aforementioned subdivisions of section 44932, and a hearing before the Commission was held on August 18 and 20, 1980, pursuant to section 44944.

Prior to the start of the hearing on August 18th, appellant tendered a written motion to dismiss all charges against him for failure of the District to comply with the 90-day notice requirement of section 44938. In response, the District itself moved to dismiss the charge of "unprofessional conduct" (§ 44932, subd. (a)), which motion was granted.

Appellant also moved to strike the charge of persistent violation of, or refusal to obey, state school laws or reasonable school regulations (§ 44932, subd. (g)), for failure of the District to particularly allege which laws or regulations were violated. No ruling was made at that time, but later in the proceedings that day, the District orally moved to amend the accusation to specifically allege violation of section 44806 and California Administrative Code, title 5, section 5530. The District's motion was granted over appellant's objection.

By a decision dated September 11, 1980, which included findings of fact, two members of the three-member Commission determined that no grounds for termination were established. The decision ordered that appellant should not be dismissed and that the accusation be dismissed. The third Commission member, Administrative Law Judge Coan, dissenting, determined that grounds for termination had been established under subdivisions (a), (c) and (e) of section 44932, and urged appellant's termination.

By a letter dated September 29, 1980, appellant made a demand on the District for reinstatement and back pay pursuant to section 44946.

On November 7, 1980, the District filed a petition for writ of mandate in superior court (Code Civ. Proc., § 1094.5) challenging certain of the Com-

mission's findings and its majority decision. Pursuant to order of the court, an alternative writ of mandate issued on that same day.

Following a hearing and the filing of a notice of decision, the trial court, on February 5, 1981, filed its judgment granting a peremptory writ of mandate commanding the Commission to set aside its decision and to modify its decision to hold that appellant should be dismissed pursuant to section 44932, subdivisions (a) (immoral conduct), (c) (dishonesty) and (e) (evident unfitness for service) based on appellant's "conduct in purchasing and receiving goods, believing them to be stolen."

Notice of entry of judgment was filed and mailed on April 3, and appellant filed a timely notice of appeal from the judgment on April 6, 1981.

Testimony from the administrative hearing showed that a student informant who had been in appellant's classes for some three years reported to Officer Ted Gargalikis, liaison officer between the District and the Pittsburg Police Department, that he had observed daily dice games, the display of knives and firearms, and drug transactions occurring in appellant's auto shop classes in appellant's presence, and that appellant had not taken action to report such activity. As part of an investigation into the matter, Officer Gargalikis placed Richard Head, a reserve officer from the Brentwood Police Department, in two of appellant's classes to pose as a transfer student named "Lewis" for purposes of observing, recording and reporting classroom activities. This was done with the permission of school officials.

Officer Head began attending the classes on May 12, 1980. Head testified that on May 13th, he overheard appellant say in front of the class to a student that he (appellant) had "some dudes in the business"; that the student replied, "yeah, the stealing business"; and that appellant responded, "yes," adding that he could get anything he wanted.

The following day, Head approached appellant and asked him if he needed any batteries, auto parts or tire wheels, telling him that he could get (meaning "rip off") batteries from a place where his cousin worked in Concord. Appellant recalled at the hearing that Head had mentioned Sears as the place where his cousin worked and that he could get heavy duty "Diehard" batteries. He also recalled Head telling him, "I can get you anything you want." Head asked $40 for two batteries, and they arranged to meet at the auto shop before 8 a.m. the next day. They met as planned, and appellant bought two batteries from Head for a total of $30 in cash paid later that morning. Appellant and Head each loaded one of the batteries from Head's truck into appellant's truck at the shop. The batteries were 12-volt ones

furnished to Head by Officer Gargalikis, and were evidently not heavy duty. Head testified that appellant asked him if he could get more batteries—but of the heavy duty type—and also asked for some 13-inch tires and wheels for a Vega.

On May 19th, Head again approached appellant and this time offered to sell him four stock 15-inch wheels, two Chevy hubcaps and two .38-caliber pistols. He told appellant that the guns were "too hot to keep," and that he wanted to sell one and keep the other. Appellant then said, "I'll meet you at Burger King." Head kept the appointment, but appellant never showed up.

On May 21st, at Head's urging, appellant agreed to a meeting, and the two met later that day at Los Medanos Hospital. Head testified that he had explained to appellant that he had more stolen firearms to sell and that he handed appellant a list of the guns, which list appellant read and handed back. Head also testified that they had agreed to a price of $100 for all five guns. At the hearing, appellant did not recall seeing such a list or being told of the guns. Head arrived with the five guns (two rifles, two pistols and a sawed off shotgun), which guns had been supplied to him by the Pittsburg Police Department. The guns were partially wrapped in a blanket in the back of Head's pickup truck.

Head showed appellant the weapons. At the hearing, Head stated that appellant said, "Yeah, that's all right," upon being shown the shotgun. Appellant, however, testified to having been surprised to see guns because he expected to see "some wheels and tires and some tools and stuff like that."

As police officers surveilled the two, Head loaded the blanket-wrapped weapons into the back of appellant's truck, and appellant drove off. Appellant did not pay for the guns. The officers followed appellant for a time and then stopped him, arrested him and found the weapons in the truck. With appellant's consent, officers searched his residence and found the 12-volt batteries in his garage, still in boxes.

During answers to police questioning following his arrest, appellant said that Head gave him a group of papers prior to the meeting on the 21st saying, "Here's the stuff I got . . . ." He also stated to police that he had warned his students on the first or second day of Head's attendance in class that he had a "cop" or "narc" in the class.

At the hearing, appellant's explanation of events was that the transactions with Head were designed to recover tools and equipment previously stolen

from the auto shop, of which some $400 worth was his own personal property and for which loss the District could not reimburse him; that he had in the past been able to recover property stolen from the auto shop by talking directly to students whom he suspected had committed such thefts; and that he had recently expended $25 of his personal funds on the street and had gone to a garage in attempts to locate the most recently stolen property. He further testified that he was interested in obtaining *tools* from Head, not guns or batteries; that he thought Head was a thief and would "run me into my $400 worth of stuff and possibly the stuff to work in the classes"; that he intended to eventually turn in all goods purchased from Head to an acquaintance, Captain Landry of the Pittsburg Police Department; and that when he saw the guns on the 21st, he decided that things had gone too far and left the hospital intending to have lunch, pick up the batteries from home and seek out Captain Landry at a lunch spot which he knew Captain Landry to frequent. However, he was prevented from doing so, he stated, by his arrest. Appellant also stated that he had been suspicious of Head because the batteries turned out not to be from Sears and because of Head's apparent age (he was 29), claimed "B" average, dress and general demeanor, and sudden appearance toward the end of the semester. Appellant testified, "So, I said right then something is wrong and I flashed it to the kids right in front of his face."

Based on the foregoing evidence, all three members of the Commission in essence found that appellant had attempted to make the purchases of stolen property as alleged in the accusation. However, the two-member majority, in determining that no grounds for termination had been established, further found as follows: "In April 1980 [Jeffery's] body and fender shop had been broken into and all tools and equipment stolen. [Jeffery] had $400.00 worth of his own tools stolen which the District could not replace. He attempted to find the stolen property. When the undercover officer appeared to have access to the stolen property, he thought by playing along with the officer, that he might be able to locate the property stolen from the school's body and fender shop and his own tools. He always intended to turn whatever merchandise he purchased over to a local police captain. When he saw the sawed off shotgun and knowing that mere possession of it was a serious crime, he realized things had gone too far. He intended to deliver the weapon to the police captain but was unable to do so because of his arrest. [¶] The two batteries were found in his home, unused. [¶] The evidence established that [Jeffery] used poor judgment; he did not intend to keep the stolen items or to dispose of them for his own personal advantage."

Exercising its independent judgment upon the same evidence, as contained in the administrative record, the trial court determined that grounds for

dismissal existed under section 44932, subdivisions (a), (c) and (e), concluding as follows: "[Jeffery] is unfit for service, dishonest and is guilty of immoral conduct in purchasing and receiving goods, believing them to be stolen, to wit: two batteries and firearms consisting of a rifle, two shotguns and five [*sic*] pistols. The court finds it to be incredible the testimony that [Jeffery] did these acts as an agent of the police in seeking out the culprits of his own burglary. The court finds, therefore, that [Jeffery] did have specific criminal intent to buy stolen property and, therefore, actually committed two attempts to buy stolen property; that negotiations for these transactions were made in or near the classroom and one transaction was completed on school grounds."

Discussion

I. *The 90-Day Notice Requirement*

At the outset, we address the contention that the Commission lacked jurisdiction to proceed for failure of the District to give appellant 90-day written notice of the charges before suspending him and filing the charges. Section 44938, upon which appellant relies, states in pertinent part: "The governing board of any school district shall not act upon any charges of unprofessional conduct or incompetency unless . . . at least 90 days prior to the date of filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct or incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge. . . . 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932."

Appellant was originally charged with "unprofessional conduct" (§ 44932, subd. (a)) as well as other grounds for dismissal under the section. Upon his motion to dismiss the charges at the hearing, the District voluntarily dismissed the unprofessional conduct charge, leaving the other charges of the accusation intact. Thus, the District did not proceed upon the unprofessional conduct charge, and appellant has no cause to complain in view of the section's explicit direction that 90-day notice of section 44932 charges *other than* "unprofessional conduct" and "incompetency" is not required. (*Tarquin* v. *Commission on Professional Competence* (1978) 84

Cal.App.3d 251, 260 [148 Cal.Rptr. 522] [interpreting predecessor section 13407].)

Despite the inapplicability of section 44938 to the remaining charges against him, appellant maintains that, under the decision in *Livermore Valley Joint Unified Sch. Dist.* v. *Feinberg* (1974) 37 Cal.App.3d 920 [112 Cal.Rptr. 923], *all* charges should have been dismissed. In *Feinberg,* the appellant had been charged with three grounds for dismissal, including "unprofessional conduct," but was not given the mandated 90-day prior notice. The district obtained judicial authorization to discharge him on those grounds. (*Id.,* at p. 921.) In concluding that the district's filing of charges was premature for failure to give proper notice, the appellate court in *Feinberg* felt compelled to reverse the judgment, even though the proof against the appellant might have been sufficient to establish grounds for dismissal other than "unprofessional conduct." The court reasoned: "It has long been recognized that a particular act or omission may constitute all three of the grounds of dismissal here charged [citation]. Here, the great bulk of the specific deficiencies charged and proven against appellant fall within the term 'unprofessional conduct,' even though they may go to establish either 'evident unfitness' or 'persistent disregard of regulations.' It follows that we cannot attribute the judgment to grounds other than professional conduct, and must reverse the judgment in its entirety [citation]." (Pp. 922-923.)

The situation on review in this case is unlike that in *Feinberg.* Here, because the unprofessional conduct charge was dismissed at the outset of the administrative hearing, neither the Commission nor the superior court proceeded upon the unprofessional conduct charge, and there is now no question but that the evidence presented was relied upon only in determining the other charges. Reversal is thus not required, even if it be assumed *arguendo* that proof of attempting to buy or receive stolen property might be considered unprofessional conduct. Moreover, notice in this case would not serve the purpose of section 44938, which is to allow a permanent employee the chance to correct his or her conduct and thus overcome grounds for the charge. (*McKee* v. *Commission on Professional Competence* (1981) 114 Cal.App.3d 718, 721 [171 Cal.Rptr. 81].) It is doubtful whether the conduct alleged here (receiving stolen property, etc.) is susceptible of the correction contemplated by the statute.

II. *Amendment of the Accusation*

As a second procedural issue, appellant asserts that the Commission improperly allowed the District to amend the accusation (see Gov. Code,

§ 11507) to correct the District's alleged failure to specify with particularity the basis for its charge of persistent violation of, or refusal to obey, laws and regulations. (Ed. Code, § 44932, subd. (g); Gov. Code, § 11503.) The issue, however, appears moot. Even if such error on the part of the Commission or such defect in the accusation would call for invalidation of the charge and any unfavorable determination based thereon, the fact is that appellant was cleared of that charge by the Commission, and the superior court did not premise its judgment on that ground.

III. *The Scope of "Independent Judgment" Review*

■ Appellant next contends that the superior court exceeded the scope of its "independent judgment" review function in "reweighing" the credibility of a witness—himself. The contention is ill-founded.

In acting upon the District's claim in its petition for writ of mandate that the Commission's findings were not supported by the weight of the evidence, the superior court was required to exercise its independent judgment on the evidence. (§ 44945; Gov. Code, § 11523; Code Civ. Proc., § 1094.5, subd. (c); *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 313-314 [142 Cal.Rptr. 439, 572 P.2d 53].) Appellant recognizes that the court's function in this case was to conduct a limited de novo review upon the administrative record and to weigh the evidence, resolving on its own any conflicts in the evidence. He argues, however, that because the Commission's two-member majority, who heard all testimony and observed the demeanor of all witnesses, found his explanation of his conduct in purchasing and receiving the merchandise from the undercover officer to be credible, and because the evidence regarding that explanation is *uncontradicted,* the superior court had no authority to "reweigh" his credibility and reject his explanation. (See *David Kikkert & Associates, Inc.* v. *Shine* (1970) 6 Cal.App.3d 112, 116 [86 Cal.Rptr. 161]; *Caro* v. *Savage* (1962) 201 Cal.App.2d 530, 541 [20 Cal.Rptr. 286].)

Initially, we cannot accept appellant's premise that the evidence was uncontradicted as to his motive in the transactions with Officer Head. Conflicting direct and inferential evidence exists as to the question of appellant's motive.

One example of direct conflict involved a key factor concerning appellant's motive—the question whether he was, as he asserted, surprised to see guns in the May 21st transaction. This bears directly on his claim that he had no interest in guns and was instead looking for tools. Head testified

that, before that meeting, he showed appellant a list of the guns and explained that he had firearms to sell. Appellant claimed not to have seen such a note or to have been told of the guns. On the other hand, appellant's own testimony showed that he knew of the proposed sale of two .38-caliber pistols—guns which he had arranged to see at the May 19th Burger King meeting which he never made. He also testified to telling another student, in reference to Head, "'Adam, you've been wanting to buy a .38 . . . there's a guy that's selling them,'" and recalled, "He went to talk to Head, you know, what happened between him and Head I don't know."

As another example, appellant claimed to have no interest in batteries, yet Head claimed that appellant asked for more batteries after the first sale, and that appellant specified that they should be heavy duty.

Appellant's asserted interest in recovering stolen tools is also in conflict with legitimate *inferences* to be drawn from the evidence. Appellant stated that Head told him he could get anything he wanted, yet appellant evidently never inquired about tools. According to appellant's own testimony, "[t]ools hadn't come into the conversation" as of the time of the arranged Burger King meeting. A logical inference from that evidence is that appellant was in fact not interested only in tools, or in tools at all.

A more glaring inferential inconsistency is appellant's testimony, and his statements to police, that he thought that Head was a "cop" or "narc." He said that he suspected that something wasn't right with Head from the start and even announced his suspicions to his class. If appellant suspected that Head was something more than the street-wise thief he pretended to be, however, it is difficult to reconcile that suspicion with appellant's claimed belief that he could recover the stolen property which he sought.

The presence of conflicting evidence and conflicting inferences in this case (of which the above are only a few examples) resolves two of appellant's arguments. First, the superior court was not bound by the findings of the Commission in exercising its independent judgment review (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774, fn. 2 [163 Cal.Rptr. 619, 608 P.2d 707]), and, second, the court was free to make its own determination of the credibility of witnesses in the process (*Guymon* v. *Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1011-1012, 1014-1016 [128 Cal.Rptr. 137], questioning the continuing validity of, and refusing to follow, any indications to the contrary in other Court of Appeal decisions including *Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179 [71 Cal.Rptr. 357] and *Kendall* v. *Bd. of Osteopathic Examiners* (1951) 105 Cal.App.2d 239 [233 P.2d 107]). We so conclude.

IV. *The Superior Court's Findings*

■ Appellant attacks the findings of the superior court as being unsupported and as being "contrary to the substantial evidence in the record."

■ "In reviewing a commission's decision, the superior court 'shall exercise its independent judgment on the evidence.' (§ 44945.) Where a superior court is required to make such an independent judgment upon the record of an administrative proceeding, the scope of review on appeal is limited. An appellate court must sustain the superior court's findings if substantial evidence supports them. [Citations.] In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court. [Citation.]" (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence, supra,* 20 Cal.3d 309, 314; *Milligan* v. *Hearing Aid Dispensers Examining Com.* (1983) 142 Cal.App.3d 1002, 1005 [191 Cal.Rptr. 490].)

■ It is undisputed in this case that appellant purchased and received the property from Officer Head, believing it to be stolen. Both the Commission and the superior court so determined. The point of disagreement was over the purity of appellant's motive in acting as he did.[2] We have already discussed the conflicting nature of much of the evidence bearing on motive; we are bound by the lower court's resolution of such conflicts. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) We are persuaded that the evidence concerning appellant's intent to turn the evidence over to Captain Landry is similarly susceptible of conflicting reasonable inferences which the lower court impliedly resolved against appellant. Against appellant's testimony that he intended to go to Landry stands his entire course of conduct prior to May 21st which circumstantially suggests that he may have had no such intention. While his claim may be viewed as consistent with his testimony of trying to retrieve the stolen goods through Head and being finally convinced that that avenue would be dangerous and unproductive, it may be equally viewed as inconsistent with his participation in transactions with Head that do not objec-

[2]The fact that the superior court phrased its determination in terms of appellant's "specific criminal intent to buy stolen property" does not indicate that an erroneous standard was utilized. Clearly, that phrase was meant to overturn, as unsupported by a preponderance of the evidence, the Commission's findings that appellant "always intended to turn whatever merchandise he purchased over to a local police captain" and "did not intend to keep the stolen items or to dispose of them for his own personal advantage."

tively seem calculated to recover stolen tools rather than to obtain other types of stolen goods. Moreover, as discussed above, the evidence in general contains inconsistencies which could reasonably be seen as undermining appellant's credibility.

We conclude, after examination of the whole record, that substantial evidence supports the findings of the superior court and that there was therefore no abuse of discretion. (Code Civ. Proc., § 1094.5, subds. (b) and (c).) ■ In briefing this issue, appellant dwells on his assertion that substantial evidence *contrary* to the trial court's findings exists. Our function upon review of the lower court's exercise of independent judgment on the administrative record, however, is to ascertain whether substantial evidence *supports* such findings. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) Once having so determined, it is of no further significance that evidence contrary to such findings may also exist.

V. *The Affirmative Defenses of "Unclean Hands" and Equitable Estoppel*

Lastly, appellant contends that the superior court abused its discretion in rejecting or failing to consider his affirmative defenses of unclean hands and estoppel. We find no abuse of discretion.

■ The "unclean hands" defense is based entirely on the mistaken assumption that appellant was required to be reinstated with back pay within five days following the Commission's decision that he should not be dismissed; appellant argues that failure to reinstate him upon his repeated demands prevented the District from proceeding against him. He relies on the statutory authority of section 44946, which provides: "If the employee has been suspended pending the hearing, he shall be reinstated within five days after the *governing board's* decision in his favor, and shall be paid full salary by the governing board for the period of his suspension." (Italics added.) Here, it was the decision of the Commission, not the governing board, that occurred.[3] Section 78 provides: "'Governing board' means

---

[3] In the superior court, appellant urged that section 44946 should be read together with section 44944 to reveal a legislative intent to equate the Commission's decision with that of the governing board. Subdivision (c) of section 44944 provides in part, "The decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board."

We see no reason to extend that provision beyond the confines of the section in which it is found. The provision does not by its terms purport to apply to other sections, and sections 44944 and 44946 serve dissimilar purposes. A decision of the Commission becomes significant in the context of section 44944 not for purposes of reinstatement and back pay, but for purposes of allocating between the governing board and the employee certain expenses incurred at the administrative hearing level (§ 44944, subd. (e)).

board of school trustees, community college board of trustees, and city, and city and county board of education.'' The decision of the Commission in this case was challenged by the District in superior court. The record does not reflect that the decision was adopted by any ''governing board'' as defined in section 78. Therefore, appellant was not required to be reinstated and given back pay, and the District is accordingly not guilty of unclean hands in that regard.

 The estoppel argument rests upon the District's allegedly ''wrongful actions and involvement in encouraging and soliciting wrongful acts'' by appellant. While raised as an affirmative defense in the court below, the estoppel argument does not appear from the record to have been first raised before the Commission. Appellant correctly notes that certain testimony supportive of an estoppel defense was adduced at the administrative hearing. However, no administrative record beyond the hearing transcript has been filed with this court, and there is thus no indication that the defense had been formally pleaded at that time (*La Rue* v. *Swoap* (1975) 51 Cal.App.3d 543, 551 [124 Cal.Rptr. 329] [estoppel must be specially pleaded]) so that the District could fairly and fully develop the factual evidence in support of its position.[4] Upon this record, we therefore cannot say that the superior court abused its discretion in rejecting the defense outright for failure to raise it earlier. (See *Griswold* v. *Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 652-653 [134 Cal.Rptr. 3] [appellant failed to exhaust administrative remedies where he sought to raise First Amendment claim for first time in superior court]; see also *Schoenen* v. *Board of Medical Exrs.* (1966) 245 Cal.App.2d 909, 915-916 [54 Cal.Rptr. 364].)

 Moreover, the defense would have to fail on its merits as a matter of public policy. The doctrine of equitable estoppel will not be applied against a government agency where to do so would effectively nullify a strong rule of public policy adopted for the benefit of the public. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423]; *Fullerton Union High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 378 [188 Cal.Rptr. 897]; *Crumpler* v. *Board of Adminis-*

---

[4]We reject the suggestion of appellant that estoppel—generally a question of fact—was in this case a question of law reviewable without the necessity of raising it below. That rule applies only where the evidence regarding the defense is not in conflict and is susceptible of only one reasonable inference. (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 454 [129 Cal.Rptr. 216].) Here, for example, the critical element of the District's knowledge of the true facts (i.e., the extent and nature of Officer Head's activities during the investigation) was not established. (See *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245], for a discussion of the requisite elements of equitable estoppel.)

*tration* (1973) 32 Cal.App.3d 567, 581 [108 Cal.Rptr. 293].) ▆▆▆ One strong policy of section 44932 dismissals brought, as here, on grounds of immoral conduct arising out of potentially criminal acts is to protect students, during the process and period of their compulsory education, against exposure to conduct which, due to the power of the teacher's example, pupils are apt to emulate. (See *Governing Board* v. *Metcalf* (1974) 36 Cal.App.3d 546, 550-551 [111 Cal.Rptr. 724], holding inapplicable the Fourth Amendment exclusionary rule as to evidence of prostitution illegally obtained and subsequently used against a teacher in dismissal proceedings brought on grounds of immoral conduct and evident unfitness for service.) To work an estoppel against the District on the facts before us would contravene that policy.

The record reveals that the District, at the urging of police officials, acceded to placing an undercover officer in appellant's classroom as part of a police investigation. Assuming for sake of argument that such a level of involvement on the part of the District was sufficient to give rise to an estoppel, the result of such defense would be to preclude the District from dismissing a teacher, even though the teacher might be later convicted in criminal proceedings based on the same conduct which furnished potential grounds for dismissal.[5] It would be both anomalous and a frustration of the aforementioned public policy to require a school district to continue to employ a convicted felon whose crime would provide certain grounds for dismissal. Yet such is the logical result of appellant's argument. We conclude that the public policy must prevail and bar application of the doctrine of equitable estoppel in this case.[6]

## CONCLUSION

To summarize, we hold that the Commission properly refused to dismiss charges in the accusation other than the charge of unprofessional conduct; the superior court did not exceed the scope of its independent judgment

---

[5]Subdivision (h) of section 44932 provides, as a ground for dismissal, "Conviction of a felony or of any crime involving moral turpitude."

In the instant case, the District apparently chose to institute dismissal proceedings before the outcome was known as to criminal proceedings pending against appellant.

[6]Our conclusion should not be taken to suggest that appellant could not have raised an *entrapment* defense in this case. (See *Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356, 362-370 [107 Cal.Rptr. 473, 508 P.2d 1121, 61 A.L.R.3d 342], and *White* v. *Board of Medical Quality Assurance* (1982) 128 Cal.App.3d 699, 708 [180 Cal.Rptr. 516], both of which cases involve entrapment as a defense in administrative proceedings to revoke a professional license.) Indeed, appellant's claim of having been "enticed, inveigled, induced, and entrapped . . . into purchasing purportedly stolen property" seems to be, in essence, an entrapment argument. The defense was never raised, however.

review either in reassessing the credibility of appellant's testimony or in making findings contrary to those of the Commission; and the superior court did not abuse its discretion in impliedly rejecting appellant's affirmative defenses of unclean hands and equitable estoppel. The correctness of the Commission's ruling, allowing amendment of the accusation, is a moot question.

The judgment granting the peremptory writ of mandate is affirmed.

Kline, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 9, 1983.