Filed 1/22/14  Pearlman v. City of Los Angeles Civil Serv. Com. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JEFFREY PEARLMAN,<br><br>        Appellant,<br><br>        v.<br><br>CITY OF LOS ANGELES CIVIL<br>SERVICE COMMISSION,<br><br>        Respondent. | B246759<br><br>(Los Angeles County<br>Super. Ct. No. BS136169) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

        Law Offices of Peter B. O'Brien, Peter B. O'Brien and Kelly L. Duenckel for Appellant.

        Michael N. Feuer, City Attorney, Zna Portlock Houston, Senior Assistant City Attorney and Jennifer M. Handzlik, Deputy City Attorney for Respondent.

Petitioner Jeffrey Pearlman was employed by the Bureau of Street Services of the City of Los Angeles Department of Public Works (the Department). The Department terminated his employment following a hearing held pursuant to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194. Petitioner appealed that decision to the Board of Civil Service Commissioners (the Board), which upheld the Department's decision. He then petitioned the superior court for a writ of mandate to compel the Board to set aside his dismissal. After conducting an independent review, the trial court denied the petition, finding substantial evidence to support the Board's decision. We hold that the trial court's ruling was supported by substantial evidence, and so affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUD

We recite the factual and procedural background of this matter, as found by the trial court in its decision and order denying the writ of mandate: "Petitioner began working for the City in November 1995 as a gardener caretaker. In September 2000, he was promoted to senior gardener with the City's Bureau of Street Services. Before his termination in November 2010, he worked as a senior gardener caretaker for the City's Department of Public Works, Bureau of Street Services, Urban Forestry Division. [¶] On August 22, 2002, Petitioner received a memorandum entitled 'Management Expectations Concerning Your Return to Work' ('MEA'). The MEA stated that 'disruptive and inappropriate behavior that causes discomfort in the workplace is not acceptable.' The MEA listed six examples of inappropriate behavior including the following: loudly verbalizing feelings of agitation when upset; and making inappropriate statements that are perceived as frightening to others. The MEA also warned Petitioner that further 'unacceptable interpersonal and/or employment behaviors' could subject him to discharge.

"Before receiving the City's September 2, 2010 notice of intention to take disciplinary action against him, Petitioner received four notices to correct deficiencies for the following: (1) improper behavior with supervisors, co-workers or the public on January 5, 1998; (2) excessive absenteeism on January 29, 2004; (3) using inappropriate

2

language, including making a threat, on March 14, 2006; and (4) making false and malicious statements about another employee on August 31, 2009. He was counseled for excessive absenteeism on August 26, 2003, and on October 28, 2008. Petitioner also served a ten-day suspension from work from September 7, 2009 through September 18, 2009 as a result of threatening a supervisor in December 2008 and falsely stating that another employee was having sex with another employee in September 2008.

"On August 25, 2009, Petitioner's truck was vandalized at a parking lot near the Cahuenga Pass. On August 28, 2009, or three days later, Petitioner was assigned to work on an irrigation project between Ventura Boulevard and Valley Vista Boulevard with other City employees including Louis Garcia, Daniel Hernandez, Ralph De La Cruz, and Wilfredo Trinidad. After retrieving an axe from Mr. Hernandez's truck, Petitioner began to scream about the recent damage to his truck. During his tirade, Petitioner was 'dropping F bombs, a lot of profanity. F this, F that. I'm tired of the F'en City. F, F, F. Just going on and on.' Indeed, Petitioner was so loud that he attracted a crowd and members of the public stopped on Ventura Boulevard. Mr. Garcia described Petitioner's screaming as a '10' on a scale of 1 to 10. Mr. Garcia also testified that Petitioner appeared angry, flushed in the face, was holding the axe in a manner that he was not comfortable with, and that Petitioner did not drop the axe until he asked him to [do] so on several occasions. Mr. Hernandez, who described Petitioner's screaming as a '10' on a scale of one to ten, testified that Petitioner's screaming went on for 15 to 20 minutes. Mr. Hernandez also testified he 'got a little nervous' because Petitioner was holding an axe close to him. Mr. De La Cruz described Petitioner's screaming as a '10' on a scale of one to ten, and testified that he got scared when he saw Petitioner yelling with an axe in his hands. Wilfredo Trinidad described the volume of Petitioner's voice as a nine out of ten."

Over a year later, after a Departmental investigation, petitioner received a Notice of Discharge, Suspension, or Probationary Termination, based on the August 28, 2009 incident. The Department conducted a hearing pursuant to *Skelly v. State Personnel Board, supra,* 15 Cal.3d 194, at which petitioner and his representative responded to the

3

following four causes of action: "A. On August 28, 2009, [petitioner] displayed violent and unwarranted anger, while holding a Pulaski axe in a threatening manner over co-workers who were working beneath him in a trench. [¶] B. On August 28, 2009, [petitioner] failed to cooperate by refusing to calm down after repeated requests by a lead employee and his supervisor; failing to put down a Pulaski axe when directed to do so by his supervisor; and using loud, intimidating and profane language while addressing co-workers. [¶] C. On August 28, 2009, [petitioner] disrupted and/or completely halted the work of other employees by his violent outburst. [¶] D. [Petitioner] violated a management expectations memo, dated August 22, 2002, regarding appropriate employment behavior, kinds of unacceptable interpersonal behavior and how to manage if interpersonal conflicts occur, as evidenced by the offenses described in the previous causes of action." The Management Expectations Agreement, or MEA, referenced in Cause of Action D was entered into in 2002 to resolve, short of formal discipline, an incident of uncooperative, disruptive behavior by petitioner directed towards his co-workers and supervisors.

Following the *Skelly* hearing, William Robertson, Director of the Bureau of Street Services, accepted the Department's recommendations and terminated petitioner, effective November 10, 2010. Petitioner timely appealed that decision to the Board.

A Board-appointed hearing examiner conducted a full evidentiary hearing on February 8, March 22, and April 14, 2011. On August 29, 2011, the hearing examiner tendered her written report and recommendations to the Board, finding there was insufficient evidence to supports Causes of Action A, B, and C. The hearing examiner sustained Cause of Action D, finding by a preponderance of the evidence that petitioner violated the MEA dated August 22, 2002. However, she concluded that discharge was not appropriate given the lack of evidence to support the first three causes of actions.

On November 11, 2011, the Board considered the hearing examiner's report and recommendations, the Department's written exceptions to the report and recommendations, heard the parties' oral arguments, and reviewed petitioner's disciplinary record. The Board accepted the hearing examiner's recommendations to not

4

sustain Causes of Action A, B, and C, and to sustain Cause of Action D.  Based on petitioner's disciplinary record, including his recent ten-day suspension, as well as the Department's disciplinary standards, the Board found that the discipline of discharge was appropriate, and unanimously voted to sustain the Department's discharge of petitioner.

Petitioner sought judicial review of the Board's decision by a petition for writ of mandate, seeking to overturn the Board's decision on the grounds that the decision was not supported by the evidence, that his due process rights were violated, and that the penalty of discharge was excessive.  After hearing, the trial court issued its written decision and order denying the writ of mandate.

Petitioner timely appealed that order.

DISCUSSION

1.      *Substantial evidence supports the decision to terminate*

When a writ proceeding is commenced to review the actions of an administrative agency, the trial court reviews the administrative record for errors of law and exercises its independent judgment upon the evidence.  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.)  On appeal, this court reviews the record to determine whether the trial court's findings are supported by substantial evidence.  (*Ibid.*)  We must sustain the trial court's factual findings if substantial evidence supports them.  (*Ibid.; Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1.)  In doing so, we resolve all conflicts in the evidence in favor of the judgment.  We independently determine questions of law.  (*Anserv Ins. Services, Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 204.)

Petitioner contends that "the lack of any analytic steps and findings at the trial court level evidences unsupported findings of fact and law which does not sustain the judgment."  The contention is unavailing.

Here, the administrative record contained evidence that petitioner engaged in unacceptable workplace behavior on August 28, 2009, in violation of the 2002 MEA. Multiple witnesses testified that, while on duty on that date, petitioner yelled and cursed at his fellow workers about his personal problems at a volume level three of them

5

described as a 10 on a scale of 1 to 10, and a fourth rated a slightly lesser volume level of 9 out of 10. Contrary to petitioner's assertion that the trial court made no Statement of Decision summarizing his findings of fact and conclusions of law, the court issued a seven page "Decision and Order Denying Writ of Mandate," which fully sets forth the basis for the court's denial of the writ petition. Substantial evidence supports the trial court's factual findings.[1]

2. *Petitioner was accorded due process*

Petitioner complains that his due process rights were violated because first, the incident which gave rise to the charges occurred over a year prior to the issuance of the Notice of Discharge; second, he was terminated for exercising his free speech rights; and third, the terms of the MEA upon which his termination was based were vague and did not provide him with fair warning. The contentions lack merit.

While petitioner asserts that the 12-month delay in bringing charges resulted in faded memories and stale evidence, he does not identify any particular prejudice he suffered as a result of the delay. The trial court stated, "There's simply a delay, and . . . I didn't see anything in the decision or anywhere else in the administrative record that indicated somehow Mr. Pearlman was deprived of any evidence or access to any witness as it resulted in the delay between the actual incident and the *Skelly* hearing . . . ." Because petitioner failed to show that the delay prejudiced him in any way, he has established no due process violation. (*Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 ["Delay alone ordinarily does not constitute laches . . . . What makes the delay unreasonable . . . is that it results in prejudice . . . ."].)

---

[1] We reiterate that our task in reviewing the lower court's exercise of independent judgment on the administrative record "is to ascertain whether substantial evidence supports [the] findings. [Citation.] Once having so determined, it is of no further significance that evidence contrary to such findings may also exist." (*Pittsburg Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 979.)

Moreover, petitioner's loud and prolonged diatribe about the damage done to his truck was not protected free speech. The United States Supreme Court has ruled that in the absence of speech on matters of public concern, employment decisions by public employers should not be subject to judicial second-guessing in the name of the first amendment: "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." (*Connick v. Myers* (1983) 461 U.S. 138, 146.) As the trial court stated, "Here, there is nothing in the administrative record to suggest that Petitioner's 'speech,' a profanity-laced tirade, addressed a matter of public concern."

Finally, contrary to petitioner's assertion, the MEA was not impermissibly vague and ambiguous. Rather, that document listed the types of behavior that the Department deemed unacceptable in the workplace, including "loudly verbalizing feelings of agitation when upset." The MEA further warned petitioner that his failure to abide by management expectations could result in discharge. As the trial court stated, any reasonable City employee would know that yelling profanities at co-workers and supervisors at the top of one's lungs for a sustained period of time would run afoul of a prohibition against "loudly verbalizing feelings of agitation."

The trial court also found that the MEA was not a contract creating additional terms of employment not applicable to other City workers: "I don't see the MEA as being a contract. I see it as being a document that was provided to Mr. Pearlman after a prior disciplinary incident, which explained to him or put him on notice as to what was expected of him in the workplace. So on some level, it probably clarified what was in the Personnel Policy as to what was considered to be inappropriate. . . . Essentially, if he screamed at other people or co-workers he could be fired. So it's a notice document. It's not a contract . . . requiring him to do some additional thing that was not required of another employee. [¶] Under the context, I think they were trying to be fair and provide

7

him with written notice of what was the expectation, which he did sign the memo. So he clearly understood it or appeared to have understood it."

In sum, petitioner's due process rights were fully observed throughout the agency's decision-making process.


  3. *Penalty of termination not an abuse of discretion*

As noted above, the hearing officer did not sustain the three most serious allegations leveled against petitioner, but sustained the allegation that he violated the MEA. The Board considered the hearing examiner's report at its regular meeting on November 11, 2011. After discussion, the Board accepted all of the hearing examiner's recommendations, save that of the appropriateness of the penalty of discharge for petitioner's violation of the MEA. In considering the appropriateness of the penalty issued by the Department, the Board reviewed petitioner's disciplinary record, including his prior ten-day suspension, as well as the Department's disciplinary standards as applied to other employees. It concluded that the penalty of discharge was appropriate, and upheld the Department's decision to terminate petitioner's employment.

Petitioner states, "As *Skelly v. State Personnel Board*[, *supra,*] 15 Cal.3d [at p.] 218 holds[,] excessive punishment violates the 5th and 14th Amendments and Article I, Sections 7 and 15 of the California Constitution." He provides no further analysis or argument as to why the penalty of discharge was excessive given the circumstances of this case.

Policy No. 7, section D4, of the Department's Guide to Employee Discipline authorizes a range of a six-day suspension to discharge as an appropriate penalty for a second offense of improper behavior with supervisors, fellow employees or members of the public. A Department representative with knowledge of these matters testified that he reviewed this policy and, based on his experience in the Department, discharge would be the standard penalty. Because petitioner had recently been suspended for 10 days based on incidents similar to the events of August 28, 2009, this matter undeniably constituted a second offense. The trial court found that petitioner's inability to control his temper

8

violated the MEA and that his "prior disciplinary history, including prior temper problems, supports the penalty of discharge."

The penalty imposed by an administrative agency will not be disturbed in a mandamus proceeding absent a manifest abuse of discretion by the agency. (*Flippin v. Los Angeles City Board of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 283; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown. [Citations.]" (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 47). No such showing was made here. The Board did not abuse its discretion in sustaining petitioner's discharge. Consequently, the trial court properly denied the writ petition.


DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



MINK, J.[*]


We concur:



TURNER, P. J.



MOSK, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.