ESTHER P. BOGART, Appellant, v. BOARD OF
MEDICAL EXAMINERS et al., Respondents.

Sidney W. Kaufman and N. Stanley Leland for Appellant.

Fred N. Howser, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondents.

DORAN, J.—This is an appeal from a judgment discharging an alternative writ of mandate, denying a peremptory writ of mandate, and sustaining an order of the respondent board revoking appellant's license to practice medicine. No new evidence was offered at the hearing in superior court, the matter being submitted upon the record of the proceedings before the board, together with written briefs and oral argument of the parties hereto.

According to the appellant's brief, appellant's license was issued on December 17, 1945. On July 8, 1949, appellant was charged with a violation of section 2377 of the Business and Professions Code in the procuring and performing of a criminal abortion upon the person of one Gayle Rubin on or about May 31, 1949. The respondent board found the appellant guilty as accused.

The record discloses that Gayle Rubin, a single girl aged about 20, was some five weeks pregnant when the appellant woman physician was first consulted. One Jean Warfield accompanied Miss Rubin on this first visit, at which time appellant, according to Gayle Rubin, set a price of $150, ordered Miss Rubin to take a laxative and to return May 31, 1949, with $100; appellant would do the rest.

On the designated day, accompanied by a boy friend, Miss Rubin went to appellant's office when according to the victim's testimony, the physician used some sort of liquid in a syringe. No scraping or cutting was felt but the girl felt a little pain and had some cramps. Thereafter, in response to a telephone call and due to the fact that Miss Rubin had been bleeding for two days, Dr. Bogart came to the patient's apartment, ordered everyone to leave the room and stated that there was nothing to worry about.

Dr. Walter Williams, who was called on June 4, 1949, diagnosed the trouble as "a threatened or incomplete miscarriage with localized peritonitis." Miss Rubin was sent to the general hospital on June 5th; Dr. Donald J. Crawford there examined the girl and concluded that there had been a completed abortion following a criminal induction.

Appellant denied the accusation; claimed to have first seen Miss Rubin at the latter's apartment on June 2d in response to a telephone call that a girl was sick and wanted a woman doctor; denied even making a pelvic examination, and claimed to have merely given the patient a business card with instructions "to return tomorrow morning to my office for complete physical check-up and X-ray of the back be-

cause it was the only complaint at the time, that she told me a funny feeling in the back and funny sensation in the legs." Appellant's son corroborated appellant's testimony that Dr. Bogart was at the son's house during the evenings of May 29, 30 and 31, 1949, and that the mother did not make any calls during that period.

It is appellant's contention that "The decision is not supported by substantial evidence in the light of the whole record, nor by any evidence whatsoever." In this connection appellant argues that "the only evidence that an abortion had been attempted or committed by the appellant came from the lips of Gayle Rubin, the alleged victim." It is further contended that the diagnoses of Dr. Williams and of Dr. Crawford were based upon Miss Rubin's statement that a criminal abortion had been committed; that, in effect, the board ordered revocation of appellant's license "on the testimony of Miss Rubin alone corroborated only by hearsay evidence wherein the two physicians repeated what she had told them." Alleged discrepancies in Gayle Rubin's testimony are also pointed out and that "an analysis of Miss Rubin's testimony shows it to be of practically no value." The trial court's findings are said to be based upon only surmises in respect to the commission of the alleged act.

It is elementary, as stated in *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20], that "the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury (or by a trial judge). When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

Under the rule as above stated, appellant's contentions in reference to alleged insufficiency of the evidence do not furnish ground for reversal of the trial court's findings. That these findings to the effect that appellant was guilty of the act charged are here supported by substantial evidence, cannot well be doubted. It is quite true that the appellant's version of what took place is diametrically opposed to that offered by Gayle Rubin. This fact in no manner affects the application of the above rule; it would be difficult to find a case where no contradiction exists.

Appellant has pointed out various alleged discrepancies and inconsistencies in the victim's testimony. Discrepancies

may also be found in the appellant's explanations, as pointed out in respondents' brief. ■ Any conflict in testimony was a matter to be initially determined by the board, and once again by the trial judge. The record fails to indicate that the trial judge did not "exercise independent judgment in reviewing the evidence," as argued by the appellant. Nor does it appear that the trial court's findings were based upon mere surmises of guilt. Substantial evidence and reasonable inferences support these findings.

As stated in respondents' brief, "an examination of the petition for a Writ of Mandate shows that no complaint whatever was made to the introduction of any hearsay testimony." ■ And, as said in *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 800 [136 P.2d 304], "If the proceedings before the board are to be questioned at the trial it would be the duty of the petitioner to set forth his objections in the petition for the writ." ■ Moreover, the testimony of Dr. Williams and Dr. Crawford was not, as appellant argues, based upon mere hearsay statements made by Miss Rubin, but upon personal examination of the patient indicating that an abortion had been recently performed. No merit is found in any of the appellant's contentions.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.