[Civ. No. 46957. Second Dist., Div. One. Mar. 2, 1976.]

N. RAY GUYMON, Plaintiff and Respondent, v.
BOARD OF ACCOUNTANCY, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Ronald M. Weiskopf, Deputy Attorney General, for Defendant and Appellant.

Kindel & Anderson and Paul L. Freese for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—This is an appeal from a judgment in administrative mandamus overturning a decision of the California Board of Accountancy conditionally revoking the license to practice of N. Ray Guymon. The board contends that: (1) the trial court erred in not treating itself as bound by the board's resolution of questions of credibility of witnesses; (2) the trial court's findings of fact made in the exercise of its independent judgment are not supported by substantial evidence; and (3) the court erroneously denied the board's motion to tax costs. We conclude that where the independent judgment test of judicial review of

administrative determinations applies, the trial court has the power to determine credibility of witnesses and to find the facts accordingly. We conclude also that substantial evidence in the administrative record supports the findings of fact of the trial court and that it properly denied the board's motion to tax costs. Accordingly, we affirm the trial court's judgment remanding the matter to the board.

*Facts*

Guymon is a certified public accountant. In 1965, Arthur Bourdon, also a C.P.A., was employed by Guymon as a staff accountant. Guymon and Bourdon, together with Tony Azcarate and others, were stockholders of Rice Rock Co., Inc., a corporation organized to succeed to the business of a formerly failing enterprise engaged in producing gravel and aggregate on a sublease of property, the sand and gravel rights of which were leased by Guymon and a co-lessee in equal shares. Azcarate and Guymon were directors of Rice Rock and Guymon was its president. Azcarate was an accounting client of Bourdon, acting in his capacity as an employee of Guymon.

James Hopkins was also an accounting client of Guymon. He owed $19,000 to Azcarate for services. The sum was not represented by a promissory note and there was an agreement that it would be paid at the rate of $3,000 per year without interest, thereby deferring its taxability to Azcarate who was a cash basis taxpayer. Rice Rock was undercapitalized and experienced financial difficulties. By October of 1965, it was in serious need of working capital to stay afloat. Hopkins had received $629,000 as the proceeds of liquidation of a note secured by a deed of trust and Guymon's office was instructed by Hopkins to use the sum in paying off designated obligations of approximately $200,000 owed by him.

A program was arranged by which, in late October 1965, Hopkins paid to Rice Rock the $19,000 he owed to Azcarate. The corporation issued its note to Azcarate in satisfaction of the Hopkins obligation to him in March of 1966. Shortly afterward, Rice Rock failed. Azcarate filed a civil action against Guymon and Bourdon, charging constructive fraud and recovered a judgment for the $19,000 plus exemplary damages.[1]

---

[1] The parties agree that the judgment has no res judicata or collateral estoppel consequences to the case at bench.

On November 20, 1972, the board filed an accusation against Guymon seeking to revoke his license because of the transaction. The evidence at the administrative hearing on the transaction was in sharp conflict. Azcarate took the position that he had been induced to agree to the plan and accept the Rice Rock note by reason of fraud and failure of disclosure by Guymon and Bourdon. He was impeached by a showing that while he had testified that he had complained to Guymon and disavowed the note the day after it was delivered to him, Guymon was out of the city at that time. Evidence produced by Guymon was to the effect that the transaction had been arranged with Azcarate's knowledge and consent to permit him to be paid from the cash that Hopkins had on hand but to defer taxation to the following year. The evidence showed, also, that, as a director of Rice Rock, Azcarate was familiar with its unsound financial condition, and that despite its lack of working capital the company was considered to have a potential of success. It showed also that Azcarate had held the note for about one year before raising any question about it. Guymon's evidence was in turn impeached by a deficiency of documentation of the transaction in the corporate records of Rice Rock.

The board found that Guymon was guilty of fraud and dishonesty and revoked his license to practice accounting, suspended execution of the revocation, and placed him on probation for two years. Pursuant to Code of Civil Procedure section 1094.5, Guymon filed a petition for writ of mandate in the superior court seeking review of the board's determination. Exercising its independent judgment in a limited trial de novo on the record of the administrative proceedings (*Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]), the trial court found that the board's determination that Guymon was guilty of fraud and dishonesty was contrary to the weight of the evidence. Accordingly, it set aside the revocation of Guymon's license and remanded the matter to the board. The board appealed from the judgment granting a writ of mandate encompassing that ruling.

### Credibility

The board's principal contention on appeal is that the trial court, while using its independent judgment to determine the validity of the administrative decision, is nevertheless bound by determinations of credibility of witnesses made by the agency at the administrative hearing. Thus, while the board's brief concedes that the evidence is in sharp conflict with respect to Azcarate's consent to the transaction (appellant's

opening brief, p. 6), the board argues that the administrative resolution of the conflict is binding upon the court.

There are two separate approaches to the question of the scope of judicial review of administrative determinations based upon conflicting evidence at a hearing. One view emphasizes the expertise of the administrative agency and holds that because of that expertise a court is bound by the administrative resolution of issues of credibility unless it is clearly erroneous. (See diss. opn. in *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 317 [196 P.2d 20]; see also *Lacy* v. *California Unemployment Ins. Appeals Bd.,* 17 Cal.App.3d 1128, 1135 [95 Cal.Rptr. 566].) The other view, emphasizing the dangers in administrative quasi-judicial adjudication by the same agency that investigated, brought, and prosecuted the proceeding (see e.g., *Patty* v. *Board of Medical Examiners,* 9 Cal.3d 356, 366, fn. 8 [107 Cal.Rptr. 473, 508 P.2d 1121, 61 A.L.R.3d 342]) places the duty of resolution of conflicting evidence and questions of credibility in the reviewing court. (See majority opinion, *Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301; *Bixby* v. *Pierno,* 4 Cal.3d 130, 138 [93 Cal.Rptr. 234, 481 P.2d 242].)

California has seemingly adopted the rule of broad scope of review of administrative adjudication where the independent judgment test applies, as it does where the adjudication affects a fundamental vested right.[2] (*Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553]; *Bogart* v. *Bd. of Medical Examiners,* 105 Cal.App.2d 250, 253 [233 P.2d 100]; *Bohn* v. *Watson,* 130 Cal.App.2d 24 [278 P.2d 454]; *Mast* v. *State Board of Optometry,* 139 Cal.App.2d 78 [293 P.2d 148]; *Caro* v. *Savage,* 201 Cal.App.2d 530, 539 [20 Cal.Rptr. 286]; *Le Strange* v. *City of Berkeley,* 210 Cal.App.2d 313, 321 [26 Cal.Rptr. 550]; *General Motors Corp.* v. *Cal. Unemployment Ins. Appeals Bd.,* 253 Cal.App.2d 540, 545 [61 Cal.Rptr. 483]; *King* v. *California Unemployment Ins. Appeals Bd.,* 25 Cal.App.3d 199, 203 [101 Cal.Rptr. 660]; *Petrucci* v. *Board of Medical Examiners,* 45 Cal.App.3d 83 [117 Cal.Rptr. 735]; Kleps, *Certiorarified Mandamus Review,* 12 Stan.L.Rev. 554, 577.) The California position is not, however, totally clear since there is a separate line of cases which, in their language and sometimes in their rationale of decision, state that judicial review of administrative determinations is

---

[2]The case at bench does not involve and we have not considered the scope of judicial review of administrative resolution of conflicts in the evidence relating to expertise in drawing conclusions from historical fact as opposed to resolution of conflicts in the evidence of historical fact upon which the conclusion is based. The matter has been remanded to the board.

bound by the agency's resolution of matters of credibility despite the independent judgment standard of review. (*Kendall* v. *Bd. of Osteopathic Examiners,* 105 Cal.App.2d 239, 245 [233 P.2d 107]; *Newhouse* v. *Bd. of Osteopathic Examiners,* 159 Cal.App.2d 728, 736 [324 P.2d 687]; *Arenstein* v. *California State Bd. of Pharmacy,* 265 Cal.App.2d 179, 186-187 [71 Cal.Rptr. 357]; *Campbell* v. *Board of Dental Examiners,* 17 Cal.App.3d 872 [95 Cal.Rptr. 351].)

Whatever may have been the validity of the counterline of California cases at its inception, there is now no longer any reason to treat them as significant. The principle which accepts the administrative agency's determination of issues of credibility as binding upon judicial review is rationalized by the expertise of the agency in areas where it is empowered to act (Jaffee, *Judicial Review: Question of Law,* 69 Harv.L. Rev. 239, 261), a policy determination fixing responsibility for particular functions at a specific level of the judicial pyramid, and the oft-repeated refrain that the adjudicative body that viewed the live witnesses is better able to judge their credibility than a reviewing court operating from a "cold record" (see Netterville, *Judicial Review: The "Independent Judgment" Anomaly,* 44 Cal.L.Rev. 262, 282-283).

The rationale of reliance upon administrative expertise to bind judicial review to the agency's resolution of issues of credibility was early on rejected by our Supreme Court in *Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301. By reason of the importance of rights generally affected by administrative adjudications subject to the independent judgment test of review, California fixes responsibility for factual determination at the trial court rather than the administrative agency tier of the pyramid as a matter of public policy. (*Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, 69; *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 138.) The advantage of view of the warm witnesses over examination of the cold record fades when considered in light of modern administrative agency practice. An administrative law judge, née hearing officer, and not the board which makes the administrative determination of fact and decision on the merit, views the witnesses. (Netterville, *supra,* at p. 283.) The administrative determination can be, and usually is, thus made with no more exposure to the witnesses than is the decision of the reviewing court. (See *Cooper* v. *State Bd. of Medical Examiners,* 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593].)

██ In sum, decisions of our Supreme Court and most courts of appeal hold that the trial court has the power and responsibility to weigh the evidence at the administrative hearing and to make its own determination of the credibility of witnesses. While there are Court of Appeal decisions to the contrary, the basis upon which they were decided has disappeared from the California scene. In the case at bench, the trial court discharged the responsibility and exercised the power which the law thrusts upon it.

## Sufficiency of Evidence

Most of the board's argument to the effect that the trial court's determination is not supported by substantial evidence asks this court to reweigh the evidence in the same fashion that the trial court is required to exercise its independent judgment in reviewing the findings of the administrative agency. ██ The fact finding function is, however, that of the trial court, and we are bound by its determination. (*Petrucci* v. *Board of Medical Examiners, supra,* 45 Cal.App.3d 83, 87.) The remainder of the board's argument on the issue deals with the failure of the record to disclose that Guymon discharged his fiduciary responsibility because he discussed the matter with Hopkins before Azcarate, and did not adequately explain the transaction to Azcarate. That portion of the argument ignores other evidence that it was Bourdon and not Guymon who was the major contact with Azcarate and that Bourdon informed Guymon that he had discussed the matter with the client and obtained his consent. The disciplinary action here reviewed was imposed on Guymon and not Bourdon. The argument ignores, also, that the trial court could properly infer that Guymon had not breached his duty to Azcarate if in good faith and with full disclosure he sought to accommodate the financial and tax planning of two clients, whichever he first contacted.

## Costs

██ The board moved in the trial court to tax Guymon's costs on the ground that since the judgment and writ of mandate remanded the matter to the board for further proceedings the "prevailing party" was then still undetermined. The trial court denied the motion to tax costs. The board contends here that the trial court's action is erroneous. Our Supreme Court has held it was not. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301, 315.)

*Disposition*

The judgment issuing a writ of mandate is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 28, 1976.