Filed 8/5/13 San Ysidro Unified School Dist. v. Commission on Professional Performance CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN YSIDRO UNIFIED SCHOOL DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> COMMISSION ON PROFESSIONAL COMPETENCE, <br><br> Defendant. <br><br> ERIK ONG, <br><br> Real Party in Interest and Appellant. | D061518 <br><br><br> (Super. Ct. No. 37-2011-00086195-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge. Affirmed.

Richard A. Hamar for Real Party in Interest and Appellant.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli for Plaintiff and Respondent.

Real party in interest and appellant Erik Ong (Appellant) appeals the judgment granting a petition for a writ of administrative mandamus that was brought by plaintiff and respondent San Ysidro Unified School District (District), to set aside a decision of the defendant Commission on Professional Competence (the Commission). (Code Civ. Proc., § 1094.5; all further statutory references are to this code unless noted.) The Commission's decision, issued after an evidentiary hearing, dismissed the charges and accusations against Appellant of "evident unfitness to teach" and "immoral conduct" that were based on his violation of a District policy and teacher agreement to use technology appropriately and to keep student information, including their e-mail addresses, confidential. (Ed. Code, § 44932, subd. (a).) Appellant was also charged with other computer-related policy violations (keeping and accessing inappropriate sexually oriented material on his classroom computer). Appellant's violation of the confidentiality policy had allowed his roommate to use Appellant's personal computer to access a student's e-mail address and to send the student an inappropriate (albeit misdirected) e-mail soliciting sexual contact, and the e-mail with photographic attachments was received with shock and surprise by the student and his family, and reported to school authorities.

In response, the District filed this petition challenging the Commission's decisions that Appellant was not unfit to teach nor responsible for "immoral" conduct, and he should be reinstated. After receiving opposition, reply, and hearing argument, the trial court, exercising its independent judgment to evaluate the administrative record, ruled that Appellant's actions supported termination, based on the following areas of misconduct: Appellant violated District policy and his agreement to abide by it, by

2

keeping student e-mail addresses on his personal e-mail account and by failing to protect the confidentiality of those addresses. Due to his retaining of the address information without protection, Appellant's actions led to the student receiving the offensive e-mail. Additionally, since students, parents, and educators had become aware of the contents of the e-mail, the District's administrative personnel had lost confidence in him as a teacher.

The statement of decision identifies the following additional areas of misconduct, that in violation of District policy, Appellant's classroom computer was used during school hours to access and store 30 graphic images of female genitalia, and he could not adequately explain their origin, and students were permitted to access that classroom computer. Further, Appellant had stored on his classroom computer portions of his original novel depicting adolescent sexual encounters between 14-year-old boys and/or an adult male, and this use of the computer violated District policy. Based on the evidence of Appellant's continuous and repetitive behavior in failing to protect confidential material and in accessing inappropriate material on school-issued computers, the court concluded that his conduct showed evidence of a nonremedial character trait of immoral conduct and also, evident unfitness behavior, and his dismissal was justified.

On appeal, Appellant primarily contends the trial court failed to give adequate deference to the administrative findings of the Commission, due to that panel's expertise in teaching matters and its conclusion the District's technology employee agreement was unclear regarding confidentiality of student e-mail addresses, as opposed to "addresses." Appellant next contends there was favorable evidence about his teaching abilities that was not adequately taken into account by the trial court, and that insufficient evidence

3

supports the judgment, on the grounds there was no real "harm" incurred by the student who had received the e-mail, and the District did not show that the stored images and novel excerpts were actually accessed by any students using the classroom computer.

In response, the District argues the trial court had a substantial basis in the evidence to conclude Appellant's conduct met the test of being detrimental to the mission and function of an educator, and he had engaged in immoral conduct and was evidently unfit to teach. (Ed. Code, § 44932, subd. (a); *San Diego Unified School Dist. v. Commission on Professional Competence* (2011) 194 Cal.App.4th 1454, 1461.)

On review, we conclude the trial court appropriately applied the independent judgment standard to evaluate the evidence in this administrative record, and the judge was entitled to make credibility determinations and did so on the material issues in the case, including the adequacy of Appellant's explanations for his actions. On this record, the trial court was justified in finding a preponderance of the evidence supported the District's termination of Appellant's employment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. Employment; School Policies; Home Situation

From 1998 to 2008 Appellant was employed as a District math and science teacher or as a counselor. During the 2008-2009 school years, Appellant taught eighth graders at San Ysidro Middle School. Appellant had a classroom computer, which was not password protected, and he allowed students to use it occasionally when they had projects, needed to print from flash drives or were studying for finals. He told his substitute teachers not to allow students to use the classroom computer in his absence,

4

since he understood "there is sensitive information on the computer and that students can do lots of things. And sometimes they would or they could try to convince the substitute to let them on the computer or ask to use it . . . ."

As part of his employment, Appellant signed the District's confidential information and technology acceptable use agreement, in March 2008 (the "technology agreement.") This agreement forbids the District's employees from permitting any other person to have access to confidential information entrusted to them, and from accessing at school offensive or obscene speech or graphic representations. Among the information to be kept confidential are student related data, such as "addresses." The technology agreement told teachers that "District staff will refer any individual who does not comply with the provisions of this agreement for disciplinary action including, but not limited to, suspension or termination." Appellant had never previously received any employee discipline, and had twice received District "teacher of the year" awards.

Appellant was given a District-owned Outlook e-mail account for communications with students, parents and staff. The District's Board Policy 4040, for employee use of technology ("Board Policy 4040(a)") states that all employees are expected "to learn to use the available technological resources that will assist them in performance of their job responsibilities." Board Policy 4040(a) also states: "Employees shall be responsible for the appropriate use of technology and shall use the district's technological resources primarily for purposes related to their employment." "Inappropriate use may result in a cancellation of the employee's user privileges, disciplinary action and/or legal action in accordance with law, Board policy, and administrative regulation."

5

For several years before 2008, Appellant used his personal Hotmail account and e-mail address (captaineo70@hotmail.com) for school business, and provided it to students in his course materials. For convenience, Appellant kept using his personal Hotmail account to communicate with students. He planned to change over to the District's e-mail address the next year, because that program had been upgraded. Over several years, Appellant had accumulated approximately 60 student e-mail addresses, past and present, recorded on the server at Hotmail and linked to his personal account. The computer Appellant used at his residence to access his Hotmail account was shared with his roommate and domestic partner of six years, Francisco Orrantia-Peralta (Orrantia).

In December 2009, Appellant was planning to visit his mother in Michigan, and Orrantia became jealous and upset, suspecting Appellant might have an affair while out of town. Orrantia secretly learned the password to Appellant's account by looking over his shoulder, and using their shared home computer, Orrantia placed a couple of e-mail ads in the name of Appellant on a "craigslist men seeking men" department, searching for sexual contacts. Orrantia also looked for names of bars in Kalamazoo, Michigan. Their computer autofilled e-mail addresses that were previously used.

B. E-Mail Incident and Investigation

One of appellant's students, Luis B., received and read an e-mail from Appellant's personal Hotmail account on December 16, 2009. The e-mail read, in part, "I will be in Kalamazoo from Dec. 21 to Jan. 3. I want to fuck. Me . . . 32yo, 155 lbs, hairless chest, thick dick, DDF ["Drug-Disease Free"]. Interested? His [sic] me up. Erik." Although

two photos were attached to this e-mail, Luis did not open them, but instead showed the e-mail to his sister, since he was shocked and did not know what to do. The next day, he told their mother, who told their father. The mother opened the attached photos, which were (1) Appellant in a business suit and (2) a side view photo of an unclothed adult male from the neck down, exposing his genitals. She was offended and "didn't know what was happening and what was happening in the classroom with my -- the teacher and my son."

The next morning, December 18, 2009, Luis's mother went to the middle school to complain to the principal, David Torres (Torres), about the e-mail from Appellant's account, which she thought was obscene, and she told him the attachment was "not a photograph that a teacher can send to his student." They logged into Luis's e-mail account and she showed Torres the e-mail and the two attached photographs. Torres informed the District's superintendent, Manuel Paul, about the e-mail and photographs, and an immediate investigation commenced. Torres had his assistant principal take over Appellant's class.

Appellant was immediately placed on paid investigatory leave, for keeping student e-mails in his personal account in violation of District policy. Appellant suspected that Orrantia must have accessed Appellant's own Hotmail account, using the password, and must have sent the e-mail from their home computer.

Later, Orrantia told the District's investigator he had inadvertently sent the e-mail and attachments to Luis's e-mail address, possibly due to his "bar" search, since the letters "Bar" began Luis's last name, and the e-mail program might have stored his address. Luis told a District administrator and later testified that he was "surprised" and shocked a

7

teacher would use obscene language in an e-mail, but he still thought Appellant was a better teacher than the substitutes.

The District's investigation included a forensic search of Appellant's classroom computer, by its retained private investigator, Robert Price. He discovered that the Internet browser history located on the hard drive on that computer contained 30 different graphic images of various manifestations of the word and reproductive organ "vagina," including many graphic or grotesque depictions of female genitalia, some of a satiric or erotic nature (costumes/plastic or human models), as well as a rear view of a naked man on hands and knees. The investigator determined that those images had been called up on the classroom computer by "User X" on January 26, 2009 from 1:19 p.m. to 1:22 p.m., and he reported Appellant was not present that day.

The investigator also found a 224-page manuscript stored on the hard drive, a novel written and published by Appellant, entitled "*Normal Miguel*," the story of a homosexual teacher's life in a small town in Mexico. When the manuscript was published, the back cover of the book provided a warning that the content is "Recommended age 16 and up." In the novel, there are three explicit, lengthy, narrative descriptions of different exploratory gay sexual interactions between two 14-year-old boys and/or an adult male, the "Captain" (that need not be quoted here, as the text and personal nature of the file is undisputed). Recall that Appellant's personal Hotmail e-mail address was captaineo70@hotmail.com.

The District's investigator had retrieved the novel on the classroom computer by searching for the word "hairless," and accessing "My Documents," then a "Mr. Ong" file,

8

and then selecting "Ong." The history on the computer showed that beginning in 2008, Appellant kept the manuscript on his classroom computer for over a year and amended it about 20 times.

## C. Administrative Hearing

Following the District's investigation, it served Appellant in May 2010 with charges and a "Notice of Intention to Dismiss" him from employment. The District charged him with immoral conduct (Ed. Code, § 44932, subd. (a)(1)); unfitness for service (*id.*, subd. (a)(5)); and persistent refusal to follow Board guidelines or the law (*id.,* subd. (a)(7)).

The District next filed an amended accusation with the Commission, after taking the deposition of Appellant. He participated in the Commission's evidentiary hearing, conducted over four days in October through December 2010. The Commission consisted of a three-judge panel, including two teachers and an administrative law judge. The District presented testimony and exhibits, and a transcript is in the record.

The District's witnesses included Jennifer Brown de Valle, its experienced assistant superintendent for human resources at the time the events occurred, who participated in the investigation. Prior to the incident and investigation, Brown de Valle's son had Appellant as a teacher, and she thought he was well respected and an "excellent teacher." After she obtained the investigative findings about the combination of student e-mail addresses on Appellant's home computer, the student's receipt of the graphic e-mail, and the sexual images and text accessed on the classroom computer, she concluded "the whole picture is -- is quite disturbing." Her opinion was then changed about his

9

teaching abilities, because "teachers have a huge responsibility towards their students in terms of safety, in terms of conducting themselves in an ethical, professional way, to not harm children." She explained that it is her job to protect children: "Children don't come to school to form trusting relationships with their teachers and then receive those kinds of e-mails. That's not why children go to school. And it's my job to make sure the children are protected, and I have to make sure that children aren't going to be harmed that way."

Specifically with respect to the e-mail incident, Brown de Valle testified that she understood Appellant wanted to contact the student and apologize or explain, but she said, "[t]he questions that I had was how do you correct or remediate that type of situation. The damage was done. Luis had already received it." Regarding the novel kept by Appellant on his classroom computer, her view was: "I know that a manuscript with sexual content of that nature does not belong in a classroom. It simply does not belong, whether you're talking about a teacher's professional duty to keep personal things personal or we're talking about what's appropriate for a classroom. That manuscript is not appropriate for a classroom. It had no business being there." In the amended accusation she signed, Appellant's conduct as a teacher in these respects was alleged to provide evidence of certain fixed character traits that were unlikely to be remedied, i.e., not following regulations and school expectations. This included not safeguarding personal information about students nor adhering to the technology use policies and the user agreement over a period of time that was more than a year. She also testified that Appellant's longtime private homosexual relationship status made no difference in the District's evaluation of the situation involving his professional conduct.

10

The District called to testify its director for information management services, Frank Paredes, and he testified that he did not think the District's policy covered student e-mail addresses as confidential, since those were considered student records or demographic information. Principal Torres testified that District policy required student addresses and personal information to be safeguarded as confidential, but the sending of private e-mails between teachers and students was not forbidden in writing in the school policies, although it was unofficially discouraged. However, Brown de Valle testified that although the policy was somewhat nondescriptive, it did cover e-mail addresses as confidential material not to be shared.

Appellant testified in his defense, explaining that although he had used the same computer password for the past four years, he now understood that: "There is certainly an issue with passwords, and that's a lesson that I've learned the hard way, about varying passwords, changing passwords periodically, because the truth is, it could happen in -- You know, a breach of security like this could happen in many situations . . . . I would certainly use the District-given e-mail, and I would double check all my procedures for any security issues or confidentiality issues that might exist at my home and/or in the workplace." He admitted he had not adequately safeguarded confidential student information and he "should have been more careful."

With respect to the 30 images called up on his classroom computer on January 26, 2009, Appellant originally stated he was not present at school that day. Following two days of the hearing, he explained to the panel that he had taken at face value the investigator's report that stated he was absent that day, and he had not had access to any

11

of his records when removed from the classroom. After hearing the testimony, Appellant now realized that the report was incorrect and he was in fact teaching in the classroom on January 26, 2009. He testified that he did not remember doing so but must have called up the images, due to private research he did about a medical condition of his domestic partner's mother (menstruation and vaginal bleeding). Some of the images resemble medical textbook diagrams and representations of female genitalia, but others are not medical in nature and appear to be attempts at humor, satire, or eroticism, and are inappropriate for viewing by middle school students. There was no evidence that students actually saw the images, but they were accessible to students and not blocked.

On January 19, 2011, the Commission issued a unanimous decision in favor of Appellant. First, the Commission agreed that the e-mail sent from Appellant's e-mail account was inappropriate for student viewing, but concluded the e-mail had little, if any, negative impact on the student, who did not view the photos, although his mother did so. The Commission held Orrantia, the domestic partner, responsible for sending the e-mail by stealing the password, and concluded that the student's address had mistakenly been autofilled by the program after Orrantia typed the first few letters of an address for the e-mail software. Also, Appellant was properly apologetic over his actions.

Next, the Commission determined that allowing student e-mail addresses to be kept on the Hotmail server did not violate District rules. Although the Commission concluded that Appellant should have made additional efforts to protect such e-mail addresses, "such as having more complex e-mail addresses and using only the District's e-mail account for communication with students," the Commission believed that

12

Appellant, if returned to work, would properly follow e-mail policies and would no longer commingle student e-mail addresses with personal addresses.

With regard to the photo images on the classroom computer, the Commission stated that Appellant had materials on his classroom computer that were not job related, and "*[s]ome, if not all, of the images were inappropriate for viewing by students.*" (Italics added.) However, the Commission credited the explanation by Appellant that he was probably researching a medical issue related to a relative.

As to Appellant's novel kept on his classroom computer, the Commission stated that it was not job related and overall, it was inappropriate for reading by students. There was no evidence it had been seen by students. The decision dismissed the charges against Appellant.

### D. Administrative Mandamus Petition and Ruling

On February 18, 2011, the District filed a petition for writ of administrative mandamus seeking to overturn the Commission's decision, and lodged the administrative record. The trial court took briefing and reviewed the record. At argument, the parties addressed whether Appellant's conduct demonstrated any character flaws or unfitness to teach.

The trial court took the matter under submission and issued a tentative decision on September 2, 2011, reversing the Commission's decision. After an objection and response procedure, the court held another hearing, and Appellant requested permission to personally address the court to respond to the court's concerns in the tentative decision

13

about Appellant's credibility. Counsel for the District objected and the court ruled that no additional evidence beyond the administrative record could properly be considered.

In the statement of decision, the trial court ruled that the weight of the evidence did not support the Commission's findings under the applicable case law, in particular, *San Diego Unified School Dist. v. Commission on Professional Competence, supra,* 194 Cal.App.4th 1454. The court set forth four specific areas of misconduct by Appellant, and incorporated a breakdown of the evidence supporting its findings, attached in chart form, on each of the grounds. The District was entitled to terminate Appellant's employment for unfitness and immorality, demonstrated in the following ways: (1) violation of District policy by keeping student e-mail addresses on his personal e-mail account, and failing to protect the confidentiality of those addresses; (2) retaining e-mail addresses without protecting that information, which led to the student receiving the graphic e-mail; (3) permitting students to access his classroom computer, which contained 30 graphic images in violation of school policy, the origin of which he did not adequately explain; and (4) the classroom computer contained portions of his manuscript depicting sexual encounters between 14-year-old boys and/or an adult, and this use of the computer violated District policy. The trial court concluded that since students, parents, and educators had become aware of the contents of the student e-mail, the District administrators had justifiably lost confidence in him as a teacher, with regard to his ability to keep students safe and to act as a role model in the school.

The trial court also found the evidence showed that the graphic images and novel kept on the classroom computer were accessible by students (even if not actually

14

accessed), and that Appellant had initially denied making such a search of the Internet, but later, he inappropriately explained the reason for the search results. Due to such continuous and repetitive violations of school policy, the trial court concluded that Appellant's conduct was detrimental to the mission and function of an educator, and was immoral conduct demonstrating a character trait that led to evident unfitness behavior.

Judgment was entered on December 8, 2011, to issue a writ of mandate "instructing the Commission to set aside its finding that cause did not exist for termination and render a decision finding Ong's conduct constitutes grounds for dismissal for conduct evidencing an unfitness to teach and for immoral conduct." On being served with a notice of entry of judgment, Appellant filed his notice of appeal.

DISCUSSION

I

*GOVERNING LEGAL PRINCIPLES: REVIEW*

A. Roles of Commission and Trial Court

"Code of Civil Procedure section 1094.5 provides a trial court reviewing the decision of an administrative agency exercises its independent judgment in reviewing the evidence and that an 'abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence.' [Citation.] Under the independent review standard, the trial court may weigh the credibility of witnesses." (*San Diego Unified School Dist. v. Commission on Professional Competence, supra,* 194 Cal.App.4th 1454, 1461.)

15

In exercising its independent judgment on the evidence, the trial court correspondingly gives a " 'strong presumption of correctness' " to the Commission's findings. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).) In a proceeding on a writ of administrative mandamus, "the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Ibid.*; *San Diego Unified School District v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1140.)

"By reason of the importance of rights generally affected by administrative adjudications subject to the independent judgment test of review, California fixes responsibility for factual determination at the trial court rather than the administrative agency tier of the pyramid as a matter of public policy. [Citations.] The advantage of view of the warm witnesses over examination of the cold record fades when considered in light of modern administrative agency practice." (*Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1015.)

Independent judgment review " 'does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort . . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the board.' " (*Fukuda, supra,* 20 Cal.4th at p. 812; see also *Mason v. Office of Administrative Hearings* (2001) 89 Cal.App.4th 1119, 1130.)

This "strong presumption of correctness" is not identical to substantial evidence review by a trial court, which is still obligated to make its own, independent findings.

(*San Diego Unified School District v. Commission on Professional Competence, supra*, 214 Cal.App.4th 1120, 1141.) "[T]he presumption provides the trial court with a starting point for review--but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings. . . . [T]here is no inconsistency in a rule requiring that a trial court begin its review with a presumption of the correctness of administrative findings, and then, after affording the respect due to these findings, exercise independent judgment in making its own findings." (*Fukuda*, *supra*, 20 Cal.4th at pp. 818-819; Ed. Code, § 44945.)

The independent review standard allows the trial court to weigh the credibility of witnesses. (*Pittsburg Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 977 (*Pittsburg*); *Candari v. Los Angeles Unified School District* (2011) 193 Cal.App.4th 402, 407-408 (*Candari*).) The trial court is permitted to draw reasonable inferences from the evidence and to make its own credibility determinations. (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 868.) The trial court is obligated to consider all of the evidence in this type of independent judgment proceeding, and if it fails to do so, reversible error can result. (See *San Diego Unified School District v. Commission on Professional Competence, supra*, 214 Cal.App.4th 1120, 1149; *San Dieguito Union High School Dist. v. Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 288.) In the latter case, further proceedings were ordered on remand to allow the trial court to consider all of the record evidence, in determining whether there was a factual

17

nexus between the teacher's misconduct (repeated absences) and unfitness to teach, and whether the repeated absences amounted to a " 'persistent violation . . . of school rules' " within the meaning of the Education Code. (*San Dieguito Union High School Dist. v. Commission on Professional Competence, supra,* 135 Cal.App.3d 278, 287-289.)

### B. Scope of Review on Appeal; Claim of Deference Due

This was a close case, as evidenced by the differing conclusions reached by the trial court and the Commission, and unquestionably, the standard of review utilized on appeal dictates the outcome. Appellant's arguments on appeal incorrectly focus upon the administrative findings of the Commission and claim inadequate deference was paid to them by the trial court. Appellant also reargues the conflicting evidence to support his position he is good at teaching (e.g., past awards and acknowledgments).

Appellant's beliefs about which should be the relevant facts and his proposed approach to review are not supported by the authorities. It is well accepted that the function of the appellate court, upon review of the lower court's exercise of independent judgment on the administrative record, "is to ascertain whether substantial evidence supports such findings. [Citation.] Once having so determined, it is of no further significance that evidence contrary to such findings may also exist." (*Pittsburg, supra*, 146 Cal.App.3d 964, 979, italics omitted; *San Dieguito Union High School Dist. v. Commission on Professional Competence* (1985) 174 Cal.App.3d 1176, 1179-1180.)

" 'After the superior court makes an independent judgment upon the record of an administrative proceeding, [the] scope of review on appeal is limited.' [Citation.] We must sustain the trial court's findings if they are supported by substantial evidence.

18

[Citation.]  In reviewing the evidence, we resolve all conflicts in favor of the party prevailing at the trial court level and must give that party the benefit of every reasonable inference in support of the judgment.  ' " 'When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court.' " ' "  (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1461; *Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 378.)

"Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  (*Hosford v. State Personnel Bd.* (1977) 74 Cal.App.3d 302, 307.)  It is sufficient " 'if any reasonable trier of fact could have considered it reasonable, credible and of solid value.' "  (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 214 Cal.App.4th at p. 1142.)

In light of the above standards, we reject the threshold arguments by Appellant that the superior court improperly reweighed the evidence, or wholly disregarded certain factual findings of the Commission.  It is likewise unnecessary to address the District's point that the Commission did not have the benefit of the analysis in the published case of *San Diego Unified School Dist. v. Commission on Professional Competence, supra,* 194 Cal.App.4th 1454.  The statement of decision and the record as a whole reveals that the superior court properly held the District, as the petitioner, to its burden to convince it that the Commission's administrative findings were contrary to the weight of the evidence, on the issues raised by the charges of unfitness.  (*Fukuda*, *supra*, 20 Cal.4th at p. 817.)

19

## II

*GOVERNING LEGAL PRINCIPLES:  GROUNDS FOR DISMISSAL*

A.  Legal Standards on Evident Unfitness to Teach

Education Code section 44932, subdivision (a)(5) provides that a permanent employee of a public school district may be dismissed for "evident unfitness" for service. In the context of a teacher, " 'evident unfitness for service' . . . means 'clearly not fit, not adapted to or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies.'  Unlike 'unprofessional conduct,' 'evident unfitness for service' connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district."  (*Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1444 (*Woodland*), fn. omitted.)

In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 (*Morrison*), our Supreme Court articulated factors relevant to a determination of a teacher's unfitness to teach, as follows:  (1) "the likelihood that the conduct may have adversely affected students or fellow teachers [and] the degree of such adversity anticipated," (2) "the proximity or remoteness in time of the conduct," (3) "the type of teaching certificate held by the party involved," (4) "the extenuating or aggravating circumstances, if any, surrounding the conduct," (5) "the praiseworthiness or blameworthiness of the motives resulting in the conduct," (6) "the likelihood of the recurrence of the questioned conduct," and (7) "the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers."  (*Id*. at

20

p. 229, fns. omitted.)  "These factors are relevant to the extent that they assist the board in determining . . . the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the [school district's] standards."  (*Id*. at pp. 229-230.)  There must exist a "factual nexus between [the teacher's misconduct] and unfitness to teach."  (*San Dieguito Union High School Dist. v. Commission on Professional Competence*, *supra*, 135 Cal.App.3d at p. 288.)  Fitness to teach is a question of ultimate fact.  (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3; *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1775.)

If an analysis of the *Morrison* criteria indicates a teacher is unfit for service, "the next step is to determine whether the 'unfitness' is 'evident'; i.e., whether the offensive conduct is caused by a defect in temperament."  (*Woodland*, *supra*, 2 Cal.App.4th at p. 1445.)

### B.  Status of Alternative Charges:  Persistence etc.

In addition to unfitness for service (Ed. Code, § 44932, subd. (a)(5)), Appellant was charged with immoral conduct (*id.*, subd. (a)(1)); and "persistent refusal" to follow Board guidelines or the law (*id.,* subd. (a)(7)).  The trial court's statement of decision expressly made findings that Appellant's conduct demonstrated unfitness to teach and was contrary to the mission and function of an educator, and it fulfilled the definition of immoral conduct as well.  However, the court did not make specific findings on any persistent refusal to follow Board policies (Ed. Code, § 44932, subd. (a)(7)), although there was an implied reliance on the significantly ongoing nature of Appellant's District

policy violations (e.g., keeping student e-mail addresses over a four-year period, and storing the novel more than one year).

As correctly noted by the Commission in its decision, a particular act or omission may constitute more than one cause for removal under this section. (*Tarquin v. Commission on Prof. Comp.* (1978) 84 Cal.App.3d 251, 260.) Under these circumstances, the charge of "[i]mmoral or unprofessional conduct" under Education Code section 44932, subdivision (a)(1) is largely encompassed by the evident unfitness ground for dismissal. Historically, "the determinative test [is] fitness to teach; the terms 'immoral' or 'unprofessional conduct' are so broad and vague that, standing alone, they could be constitutionally infirm; hence the proper criteria is fitness to teach. . . . [T]he board cannot 'abstractly characterize the conduct . . . as "immoral," "unprofessional," or "involving moral turpitude" within the meaning of [Education Code] section 13202 . . . unless that conduct indicates that petitioner is unfit to teach.' " (*Board of Education v. Jack M., supra,* 19 Cal.3d 691, 696-697; *San Diego Unified School District v. Commission on Professional Competence, supra*, 214 Cal.App.4th 1120, 1142.)

Appropriately, the District's administrator testified that the fact that Appellant is in a long-term private homosexual relationship made no difference to the District's analysis of his professional conduct. Nevertheless, because of the peculiar circumstances of Appellant's personal e-mail account being hijacked by his domestic partner, the trial court could properly rely upon that lack of protective safeguards as supporting grounds for Appellant's dismissal. The statutory definition of immoral or unprofessional conduct (Ed. Code, § 44932, subd. (a)(1)) "must be considered in conjunction with the unique position

22

of public school teachers, upon whom are imposed 'responsibilities and limitations on freedom of action which do not exist in regard to other callings.' " (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1466 [this court ruled that a teacher's personalized, repeated public posting on a web site of pornographic self portraits and obscene text constituted immoral conduct that showed "indecency" behavior and "moral indifference"].)

"In the context of a teacher, ' "evident unfitness for service" . . . means "clearly not fit, not adapted to or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies." Unlike "unprofessional conduct," "evident unfitness for service" connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectation of the employing school district.' " (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1462; *Woodland, supra,* 2 Cal.App.4th 1429, 1444.)

To the extent any findings on fitness or unfitness to teach are to be implied in support of a judgment (e.g., about an individual's underlying temperament or character traits), they must be supported by substantial evidence. (*San Diego Unified School District v. Commission on Professional Competence, supra*, 214 Cal.App.4th 1120, 1152.) In this case, the immorality ground and the "persistence" ground under Education Code section 44932, subdivisions (a)(1) and (7) are part and parcel of the overall fitness issue, and the judgment must be upheld, in light of all the applicable standards, if it is substantially supported on the issue of evident unfitness to teach, i.e., the chief charge pursued by the District and the main issue analyzed in the statement of decision.

23

III

*MERITS OF ARGUMENTS ON FITNESS TO TEACH*

The usual legal analysis in cases of this nature would examine the record for purposes of checking off the relevant factors enunciated in *Morrison, supra*, 1 Cal.3d 214 for evaluating unfitness to teach.  (*Governing Board v. Haar*, *supra*, 28 Cal.App.4th 369, 384 [only pertinent factors need be examined].)  The evidence must be sufficient to support a finding that the teacher engaged in misconduct, the misconduct met the *Morrison* criteria for unfitness for service, and it was derived from a temperamental defect that made his unfitness evident.  (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1462; *Woodland*, *supra*, 2 Cal.App.4th at p. 1445.)  To demonstrate unfitness for service, the evidence must establish the teacher's conduct adversely affected students or fellow teachers and administrators to a significant degree, and had a great likelihood of recurrence.  (*Morrison*, *supra,* at p. 235.)

Here, however, Appellant only vaguely discusses those case law criteria, and he changes his approach from the opening brief to the reply brief, to attempt to make a showing under *Morrison, supra,* 1 Cal.3d 214, that there are constitutional issues of freedom of speech, privacy or discrimination involved here.  He admits no such constitutional issues were raised below, and the record does not support addressing them now.

Moreover, Appellant's position on appeal has consistently been to dispute that any policy violations occurred, and to baldly contend that the Commission got it right and the

24

superior court got it wrong, based on his own views of the evidence that no "fixed character trait" of immoral conduct was proven. In its respondent's brief, the District emphasizes the evidence of Appellant's continuing disregard for school policies and procedures, to argue that "his behavior defies the authority needed in a school setting and thus has a high likelihood of recurrence." Consequently, during oral argument, members of the panel closely questioned both counsel about the required nexus between Appellant's conduct and his fitness to teach, in terms of any showing made about his character flaws or irremediable temperamental defects or inadequacies that appeared in the record. Counsel were essentially unable to assist the Court in answering this question. Having reexamined the record, we are satisfied that the trial court was presented with a full administrative record about the essential legal and factual issues on any causation of the conduct that amounted to unfitness to teach, in terms of the teacher's defect in temperament or lack of good judgment. (See *Woodland, supra,* 2 Cal.App.4th at pp. 1444-1445.)

We can accordingly apply the established legal standards discussed above, to address the four areas of misconduct identified in the trial court's ruling and to determine whether there is any substantial record support for the judgment. In light of the comprehensive nature of this record, there is no danger that the concerns identified in *San Dieguito Union High School Dist. v. Commission on Professional Competence*, *supra*, 135 Cal.App.3d at page 288 are implicated here: "The *Morrison* standard gives substance to the tenured teacher's right to be discharged only for cause. If the *Morrison* standards are not applied, the teacher is left essentially at the mercy of the Board (or the

25

trial court) to be discharged whenever cause exists in the subjective estimation of either body."

A. E-mail to Student: Violations of District Policy and Technology Agreement

"A teacher may be discharged where his conduct 'has gained sufficient notoriety so as to impair his on-campus relationships.' " (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1463.) Where a principal or administrator loses confidence in a teacher's role modeling ability toward students, testimony to that effect may constitute substantial evidence of an adverse impact upon the teacher's perceived professionalism. Whether we agree or not with the trial court's statement that this case involved personal conduct of a "more egregious" nature (student's receipt of e-mail) than that considered in the above-cited recent case (ads personally directed to adults), the main issue remains, whether Appellant's conduct had an adverse effect on his ability to carry out his duties as a cooperating and respected member of the District staff.

Specifically, Appellant claims that since the student who received the sexually explicit mail testified only that he was shocked and surprised to get it, but that he still thought Appellant was a good teacher, the trial court should have concluded there was no harm done through the one time sending of the e-mail. This argument asks us to reweigh the evidence or to draw different conclusions about evident teacher unfitness, which is not a proper approach on appeal. Thus, even though Appellant's classroom performance and his overall ability to teach were shown to be previously highly respected and satisfactory, we also look to whether other evidence showed that his essential

26

professional qualities and personal temperament adversely affected his ability to do his job.

First, the District's assistant superintendent Brown de Valle testified that the material on the classroom computer that was disclosed by the investigation changed her previously favorable opinion about Appellant's teaching qualifications, because "teachers have a huge responsibility towards their students in terms of safety, in terms of conducting themselves in an ethical, professional way, to not harm children."  She explained why the sending of the e-mail and the accessibility of the images and novel reduced her esteem for Appellant as a teacher:  "Children don't come to school to form trusting relationships with their teachers and then receive those kinds of e-mails.  That's not why children go to school.  And it's my job to make sure the children are protected, and I have to make sure that children aren't going to be harmed that way."  Additionally, she testified that Appellant had shown through his conduct that he had fixed character traits relating to a pattern of not following regulations and expectations for protecting confidential student personal information, over time, and he did not appear to respect or observe appropriate boundaries between students and teachers.  The trial court could properly rely on these views, regarding unfitness to teach, in forming its conclusions.

Next, Appellant argues that the court misinterpreted the District policy and the teacher technology agreement as covering student e-mail addresses as confidential material, when there was some question about the precise language of the policy.  Board Policy 4040(a) states in part, "The Board expects all employees to learn to use the available technological resources that will assist them in performance of their job

27

responsibilities." It continues, "Employees shall be responsible for the appropriate use of technology and shall use the district's technological resources primarily for purposes related to their employment." "Inappropriate use may result in a cancellation of the employee's user privileges, disciplinary action and/or legal action in accordance with law, Board policy, and administrative regulation."

In the District's technology agreement, student related data includes "addresses" as confidential information. District employees may not "permit any other person to have access to confidential information" that has been entrusted to District's employees and may not "access offensive, . . . obscene speech and/or graphic representation." Confidential student "addresses" can reasonably be interpreted as including "e-mail addresses," as Brown de Valle testified. The trial court justifiably concluded the evidence showed Appellant knowingly or carelessly violated the policy over several years, accumulating about 60 such addresses without protecting them from intrusion. This policy interpretation argument has no merit.

Even assuming the trial court understood it should begin its review "with a presumption of the correctness of administrative findings, and then, after affording the respect due to these findings, exercise independent judgment in making its own findings," (*Fukuda, supra*, 20 Cal.4th at p. 819), the court was still entitled independently to consider all the circumstances that allowed this unfortunate event to happen. The trial court applied the correct analysis and had a substantial basis to conclude that it was Appellant's policy violations that were at the bottom of the problem, that his conduct justifiably caused the District administration to develop grave doubts about his ability to

28

function effectively in his job, and the District was entitled to dismiss him, based upon what these events showed about his temperament. There was sufficient evidence to establish that Appellant's own conduct and lack of good judgment in this regard rendered him unfit for service.

### B. Classroom Computer Images: District Policy Violation

Appellant again argues that the trial court was not entitled to weigh the evidence, or it incorrectly weighed it, based upon the dearth of evidence that any students actually accessed the images of genitalia that were called up on the classroom computer. It was "User X" who called up the images, although Appellant eventually took responsibility for their presence. He points out that he taught science sometimes, and maybe this was "scientific" material, although some of the images appear to be satirical (man dressed up in a vagina costume) or erotic (partially dressed woman gesturing at her genital area).

Appellant also claims that the statement of decision erroneously questioned his credibility as to his explanation of whether he was or was not in the classroom, and why he did or did not call up these images. He contends this was not a material issue in the case, and that he merely took the word of the District investigator that he was out of the class that day, but he later realized, after hearing the evidence, that he was in the classroom that day. He does not explain why the District's investigator put in his report that he was not in the classroom, or who gave him that information (Appellant or someone else). In general, the evidence contains inconsistencies that can reasonably be seen as undermining Appellant's credibility, which was important in evaluating his fitness to teach, as well as the immorality charge.

29

Moreover, Appellant testified elsewhere that he restricted the students' use of the classroom computer, because he knew there was sensitive information on it, and he told substitutes not to permit students to use it when he was absent. He does not recognize that his credibility in contesting the charges that he violated District policy for "appropriate" use of the classroom computer was included in the material issues before the trial court, and the court could properly evaluate his testimony and related evidence on his character and fitness for service, with respect to the images accessed. Credible, competent evidence supports the trial court's findings and judgment.

## C. Novel; District Policy Violation

Appellant attacks the findings of the trial court that the storage of the novel on the classroom computer was a violation of District policy, by again pointing out that it is not known whether any students ever accessed it, since it was "buried" on the hard drive. However, the District's investigator retrieved the novel and explained that it was unprotected, and that he called it up in a fairly noncomplicated fashion, which undermines Appellant's claim there was no supporting evidence for the unfitness findings.

Again, the policy violation should be examined for its connection to Appellant's fitness for duty and his temperament. The novel was kept in the classroom computer for over a year and was amended about 20 times, raising the permissible inference Appellant was indifferent to the policy and the reason for it. The character name of the "Captain," who engages in oral sex with a 14-year-old boy, is somewhat reminiscent of the personal e-mail address of Appellant. The sexually explicit content of some of the passages in the

30

record is most inconsistent with the educational purpose of the policy:  to promote teachers' responsible, appropriate use of technology, for use "primarily for purposes related to their employment," here, math and science.

Under the technology agreement, District employees may not "access offensive, . . . obscene speech and/or graphic representation."  The court could permissibly view the evidence of the novel's text, created by Appellant and accessible at least to him, as offensive, if not obscene, particularly the adult/adolescent seduction/oral sex scene.  Such use of the classroom computer was inconsistent with District policy, and demonstrated such poor judgment in the middle school setting in this regard as to support the finding that Appellant's defect in temperament as a teacher justified his dismissal.

"Our task is to review the record and determine whether the trial court's findings (not the administrative agency findings) are supported by substantial evidence." (*Candari, supra*, 193 Cal.App.4th 402, 407-408; italics omitted.)  Viewing the relevant evidence in the administrative record in the light most favorable to the judgment, resolving all conflicts in the evidence and drawing all inferences in support of the judgment, we conclude the trial court was justified in finding the District proved by a "preponderance of evidence" that the District's personnel policies were violated and that in direct connection to those violations, Appellant showed evident and characteristic unfitness for service.  (*Fukuda, supra,* 20 Cal.4th at p. 810; *San Dieguito Union High School Dist. v. Commission on Professional Competence, supra*, 174 Cal.App.3d 1176, 1179-1180.)  In conducting this independent judgment review, "the trial court discharged

31

the responsibility and exercised the power which the law thrusts upon it." (*Guymon v.*

*Board of Accountancy, supra*, 55 Cal.App.3d 1010, 1016.)

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


AARON, J.

32